## CHADSEY *vs.* GREENE.

A vendor, who refers a purchaser to a third person for information, in regard to the property to be sold, is bound by the declarations of the person referred to, in the same manner as if he had made them himself.

On the trial of an action on a false warranty, and for a fraud in the sale of a horse, it appeared that the plaintiff, who had declined to purchase such horse, because he was ignorant of the defendant's character and responsibility, was referred, by the plaintiff, to N. for information. Held, that such declarations of N., as were designed to induce the plaintiff to confide in the defendant, were admissible, although made when the defendant was not present.

The reason for the rule, that a general warranty does not extend to visible defects, ceases when the vendor uses art to conceal, and succeeds in concealing, such defects from the purchaser.

Where, on the trial of an action on the case, for a false warranty, and for a fraud in the sale of a horse, it was proved that the plaintiff, on one occasion, observed a lameness in the horse which the defendant remarked was slight and temporary, and caused by weariness and exposure to the cold, and the court instructed the jury, that the plaintiff was not precluded from recovering, unless such limping indicated that the horse was unsound, and not merely laboring under a temporary infirmity; it was held, that such instruction, taken in connection with the circumstances of the case, was correct.

The defendant, in his plea to the count on a general warranty of soundness, having alleged that the horse was not otherwise unsound except that he was lame, and his lameness was obvious to the sight, and the plaintiff saw and knew it, the replication traversed said plea, and further alleged the horse to be otherwise unsound, and, on the trial, the defendant requested the court to instruct the jury, that if they were satisfied that the facts, therein set up, were true, it would be their duty to find, on that issue, for the defendant, although he gave said warranty, which request was refused. Held, that the defendant could prove nothing under said plea, which he could not prove under the general issue, and that the charge, which was given, being applicable to both issues, was correct.

THIS was an action on the case, brought by Euclid Chadsey against Joel T. Greene. The declaration contained two counts; one for a breach of warranty, and the other for a fraud in the sale of a horse.

The defendant pleaded first, the general issue. Secondly,

Chadsey *v.* Greene.

that the contract of warranty, referred to in the first count of the plaintiff's declaration, was as follows, viz: " Euclid Chadsey bought of Joel T. Greene, one bay horse, seven years old, warranted sound, blanket and halter included, $320. Received payment in full, Joel T. Greene, Hartford, July 6, 1853," and was not other, or different. And that said horse, at the time of such sale and warranty, was not otherwise unsound, except that he was lame; and that the said lameness of said horse, being the unsoundness mentioned and complained of in said count, was, at the time of said sale of said horse to the plaintiff, and the execution of said warranty to the plaintiff, plain, open and obvious to the sight; and that the plaintiff saw and well knew that said horse was lame, and that he examined said horse and travelled with him, and had full notice that said horse was lame, before and at the time of such sale and warranty ; and so the plaintiff was not deceived and defrauded by means of said warranty."

Issue was joined upon the first of said pleas. To the second, the defendant pleaded that " said horse, at the time of said sale and warranty, was not only lame, but otherwise unsound, and that said lameness was not, at the time of said sale and the execution of said contract of warranty, plain, open and obvious to the sight; and that the plaintiff did not, before or at the time of said sale or warranty, know that said horse was lame or unsound."

On the trial of the cause to the jury, it was admitted that the plaintiff bought the horse, halter and blanket, described in his declaration, on the 6th day of July, A. D. 1853, at and for the price of $320; and that the defendant, at the time of said purchase, executed and delivered to the plaintiff the following written bill of sale and warranty, viz :

" Euclid Chadsey, Bo't. of Joel T. Greene, one bay horse, seven years old and warranted sound, blanket and halter included,        -        -        -        -        -        $320

The above horse I purchased, yesterday, in New York city, of Charles De Wolf, for $300.

Rec'd payment in full,

JOEL T. GREENE.

Hartford, July 6th, 1853."

The plaintiff offered evidence to prove that, at the time of the purchase, said horse was, and for a long time before had been, incurably unsound, by reason of a permanent lameness in his fore shoulders. It was admitted that the plaintiff and the defendant, up to the time when the negotiation for said purchase commenced, were strangers to each other; that they met, for the first time, on the steamer " City of Hartford," then on her passage from New York to Hartford, on the evening of the 5th of July, 1853, when such negotiation commenced, (said horse then being on board said steamer,) and was continued up to the time of the final conclusion of said purchase and sale.

The plaintiff offered evidence to prove and claimed, that, in order to induce the plaintiff to purchase said horse, the defendant, on the evening of the 5th of July, stated and represented to the plaintiff, that he had been to New York for the express purpose of buying a fine horse for his own use, and for his wife to drive, and for that express purpose had that day bought the horse in question of one Charles De Wolf, and paid $300 for him; that he had given the horse a thorough trial, had driven him nearly all day on the pavements in New York before he bought him, and was satisfied that the horse was sound, fast, and safe for any person to use, that he was just such a horse as he wanted to keep, and he could not be induced to sell him.

And the plaintiff further claimed and offered evidence to prove, that afterward, during the same evening, the defendant applied to the plaintiff, referred to their former conversation, and informed the plaintiff that he had concluded that he would sell the horse, with his halter and blanket, for $325;

that he intended to leave the steamer at Rocky Hill, and let the horse go on to Hartford, and if he did not sell the horse, should send his servant up to Hartford for him the next morning; that if the plaintiff would buy the property, it should be delivered to him, at Hartford, without any expense for its transportation on said steamer, and that, in order to save the trouble of sending to Hartford for the horse, he was desirous to close the bargain, if they made one, before their arrival at Rocky Hill; and that the defendant then repeated, in substance, all that he had before said to the plaintiff regarding said horse, assured the plaintiff that his recommendation might be depended upon, and that he was willing to give to the plaintiff a satisfactory warranty of said horse; to which the plaintiff replied, that he would not buy the horse upon such recommendation, nor even with such a warranty, because the defendant was a stranger, and the plaintiff had no information regarding his character, standing, or responsibility; that the defendant then introduced to the plaintiff one Neff, as a neighbor of the defendant, and referred the plaintiff to Neff, for information regarding the defendant, and his character and responsibility; and that thereupon said Neff informed the plaintiff, that the defendant was a farmer, residing at Rocky Hill, a man of wealth, a large owner of stock in the company on whose steamer they were passengers, and therefore travelled on said steamer free of expense, that he was not a horse dealer, was a highly respectable man, that his representations regarding said horse or any thing else might be relied upon, that his word was as good as his note, and his note as good as any man's; that the defendant had been to New York to buy a nice horse or two, had bought only that one, and he did not suppose he would sell that, as he supposed he had bought him for his own use.

It being admitted that the aforesaid declarations of Neff to the plaintiff, were not made in the presence, or hearing, of the defendant, the defendant objected to the evidence of such declarations, on the ground that the pecuniary ability of the

defendant· was not in issue, and that said declarations, if made, were made in the defendant's absence and not in his hearing; but the court overruled said objection and admitted the evidence.

The plaintiff claimed, and offered evidence to prove, that, at the time of said purchase, he was very little acquainted with horses, having had but little to do with them, and was quite unskilled in all that related to their soundness or unsoundness, and in everything relating to the discovery of their maladies or defects; that he had no knowledge of any unsoundness in said horse, and neither discovered nor was informed, nor knew of any sign or indication of any unsoundness, malady, or defect in said horse, except that in a single instance, just before the conclusion of said bargain, while the plaintiff and the defendant were riding together in a wagon drawn by said horse, he observed that said horse, when he turned a corner, seemed to falter or limp on one foot; but that the plaintiff, although he afterward, and before the conclusion of said bargain, drove said horse and saw him driven by other persons, yet did not see or have any information of a recurrence of that, or any other indication of unsoundness whatever; and with respect to that indication, or limp, which the plaintiff noticed, that he mentioned it to the defendant at the time he noticed it; that the defendant admitted that he also observed it, but told the plaintiff that he did not wonder at or care for it, that it was a mere slight and temporary stiffness, occasioned by weariness, hard usage, and exposure to the cold, on the steamer, the night before, and that the horse had come from the west, about five hundred miles, to Albany, in the railroad cars, and thence to New York on a steamboat, without stopping at Albany, and without having any opportunity to lie down on the journey; that he had arrived in New York in the morning of the 5th of July, had been taken from the boat and driven hard on the pavements in New York all day, until put on board the steamer to come to Hartford, about four o'clock in the after-

noon; that when he was put on board the steamer he was in a profuse perspiration, and had probably taken a slight cold, but that he was perfectly sound, and only needed a little rest and care.

And the plaintiff claimed, and offered evidence to prove, that, by the aforesaid statements and suggestions of the defendant, regarding the aforesaid indication of unsoundness, and the character and cause of it, and of the treatment which said horse had received, his apprehensions regarding said horse's unsoundness were entirely dispelled, and he concluded to buy and did buy said horse, verily believing him to be entirely sound.

The plaintiff offered no direct and positive evidence that the defendant, at the time of said negotiation or said sale, knew that said horse was unsound; but he offered evidence to prove, and claimed that some of said statements, especially as to the price paid by the defendant for said horse, as to the driving of said horse in New York on the 5th of July, and as to his condition when put on board the steamer for Hartford, were untrue in fact, and were known to be so by the defendant; and the plaintiff claimed, that, from all the facts and circumstances proved upon the trial, regarding said negotiation and said statements and suggestions of the defendant, the jury were authorized to infer, and ought to infer and find, that at the time of the negotiation of said sale, the defendant knew said horse to be unsound, and made said statements and suggestions, with a fraudulent intent to induce the plaintiff to buy said horse, and to defraud the plaintiff thereby; and that the plaintiff was thereby deceived and defrauded in said purchase.

The defendant claimed, and offered evidence to prove, that all the statements and suggestions made by him to the plaintiff, regarding said horse, were substantially true; that he bought said horse for a sound horse, and sold and warranted him sound, believing him to be so, and having no knowledge that he was not; and that said horse was, at the

time of said sale, sound, in fact; and that, as to his lameness, the plaintiff had just as much knowledge and information as the defendant, and that whatever it was, the plaintiff was well informed, and knew of it, at the time of said purchase.

The defendant also claimed, that if said horse was unsound at the time of the sale, by reason of such lameness, it was, in fact, known to the plaintiff, and was so obvious and visible as not to be covered by a general warranty of soundness.

And that whatever he had said to the plaintiff, regarding the cause, character, or continuance of the horse's lameness, was the mere expression of an opinion, honestly entertained by the defendant, and was so understood by the plaintiff, at the time.

The plaintiff offered evidence to prove, that the unsoundness of said horse was not a slight or temporary defect, occasioned in the manner stated by the defendant, but was an organic and incurable difficulty, or malady, of long standing; that it was not, at the time of said sale and warranty, visible to, or discoverable by, a common, unskilled person, but was discoverable only by skilful judges of horses and their condition.

The defendant requested the court to charge the jury that, under the issue joined upon his second plea, if the jury should find that the facts set up in that plea were proved and true, it would be their duty to render a verdict on that issue for the defendant, although the defendant gave the warranty set up in that plea. And further claimed, that, under the first count in the declaration, the gist of the action was the deceit of the defendant upon the plaintiff, by means of a false warranty; that the action was for a deceit, and that if, in fact, the plaintiff saw, or was informed of, the horse's lameness, and discussed with the defendant its cause and probable continuance, then he was not deceived by the warranty, and could not recover under the first count.

That the mere expression, by the defendant, of an opinion that the lameness observed was a temporary and not a permanent lameness, would not render the defendant liable, under either count, unless the jury should find that the defendant knew that the fact was otherwise, and that said horse was permanently unsound.

And that the general warranty given by the defendant in this case, could afford the plaintiff no remedy for any defect or disease in the horse which was visible, or of which the plaintiff knew, or had reasonable notice.

The court charged the jury, that in order to justify them in giving a verdict in favor of the plaintiff, they must find the express warranty set up in the first count of the declaration, or that the defendant, at the time of the sale, falsely and fraudulently represented said horse to be sound, and sold him as sound to the plaintiff, knowing him to be unsound, as charged in the second count, and that the horse was in fact unsound, and that the plaintiff did not know it, and was defrauded and deceived by such representations.

That a mere temporary injury, occasioned by an accident, is not unsoundness; but that if the horse, at the time of the sale, had any disease which diminished his natural powers for usefulness or convenience, or if he had, from disease or accident, undergone any alteration of structure, which, at the time of the sale, did, or which in its natural and ordinary effect, would diminish his natural powers for use or convenience, then he was unsound.

That the general warranty of soundness did not extend to defects plainly discoverable by the eye and obvious to the senses; but that if the horse, at the time of the sale, was unsound, within the definition already given, the plaintiff was entitled to a verdict, unless he knew of such unsoundness at the time of his purchase, or unless that unsoundness was so plain and obvious to the senses as to require no experience or skill for its discovery or detection; that it was no answer to the plaintiff's claim, to show that he was informed

of a mere temporary injury, for that was not unsoundness. Nor was it an answer to the plaintiff's claim, to show that he had seen and noticed the limping or faltering before mentioned, unless such limp or faltering indicated plainly and unequivocally, that the horse was unsound, and not merely laboring under a temporary injury; and that, the general warranty being admitted, if the jury should find that the horse was, at the time of the sale, unsound, and that the unsoundness was not so plain and obvious as to be detected by the eye of a common, unskilled observer, and was not detected by the plaintiff, and he had not, in fact, notice of its existence, as an unsoundness, then the plaintiff was entitled to a verdict, on the first count, for the difference between the value of the horse as he was, in fact, and what he would have been worth, had he been sound; but if the horse was sound, or if his unsoundness was plain and obvious to the senses, or if the plaintiff, in fact, knew, or was informed of it, as an unsoundness, at the time of the sale, he was not entitled to a verdict on that count; and that if the jury should find that at the time of the sale, the horse was unsound, that the defendant knew him to be so, and yet represented him to the plaintiff to be sound, and as such, sold him to the plaintiff, and that the plaintiff was ignorant of such unsoundness, then the plaintiff was entitled to a verdict on the second count, for the damages actually sustained by him in consequence of such fraud and deception, as shown by the proof produced upon the trial; but that if the horse was sound, or if he was unsound, but the defendant did not know it, or the plaintiff did, then there was no fraud in the transaction, and the defendant was not liable on the second count.

The jury returned a general verdict for the plaintiff, and the defendant moved for a new trial.

*Welles* and *Chapman*, in support of the motion.

I. The declarations of Neff, which were objected to by the defendant, were improperly admitted.

II. The court omitted to charge the jury, upon the special issue, as was claimed by the defendant; that the first count is founded upon a false warranty, and sounds in tort, and the plaintiff must have been deceived by the warranty. 20 Conn. R., 277. 22 Conn. R., 19.

III. The court did not charge the jury, as requested by the defendant that if the plaintiff was informed of the lameness of the said horse, and discussed with the defendant its cause, and probable continuance, he could not recover on the first count. 7 Bing., 603. 2 Steph. N. P., 1289–90. 1 Sw. Dig., 382–3. The lameness was a visible, palpable unsoundness. 2 Stev. N. P., 1294.

*Hungerford & Cone*, and *Hubbard*, against the motion.

I. The testimony, admitted by the court, notwithstanding the objection of the defendant, was admissible. 1 Green. Ev., § 182.

II. To recover under the first count of the plaintiff's declaration, it was not necessary to prove that the defendant had knowledge of the unsoundness of the horse, at the time of the sale. *Williamson* v. *Allison*, 2 East., 446. *Holman* v. *Dord*, 12 Barb., 336. *Bartholomew* v. *Bushnell*, 20 Conn. R., 272.

HINMAN, J. The action was for a false warranty, with a count for fraud, in the sale of a horse. It was therefore competent for the plaintiff to introduce any evidence, calculated to sustain either claim. The defendant, having made strong representations in regard to the good qualities of the horse, that he had been to New York for the purpose of buying him for his private use, and, after a thorough trial, was satisfied that he was sound and safe for any purpose, and just such a horse as he wanted to keep, that he had bought him for three hundred dollars, to induce the plaintiff to purchase him, assured him that his representations might be relied on, and that he was willing to give a satisfactory war-

ranty. The defendant replied that the plaintiff was a stranger, of whose character, standing, or responsibility, he had no knowledge, and he would not therefore purchase him. To obviate this objection the defendant introduced one Neff to the plaintiff, and referred to him for information regarding the defendant's character and responsibility; whereupon Neff made the representations that are objected to. Now, by the rules of law, it is clear, that the representations of Neff, under the circumstances, bind the defendant in the same manner, that he would have been bound by them had he made them himself. 1 Green. Ev., § 182.

The defendant's counsel admit this. Hence, the only question here is, whether Neff's representations were any of them of a character to deceive the plaintiff; for they are claimed only under the count for fraud.

In order to accomplish a fraud, such as is claimed in this case, it was important that the plaintiff should have confidence in the fairness and integrity of the party, with whom he was dealing. And it appears to us that the representations of Neff were well calculated to give the plaintiff this false confidence in the defendant. The horse had some symptoms of being lame, and in fact was lame, and circumstances went to show that the defendant artfully concealed this from the plaintiff; to accomplish this, the defendant represented that such faltering, as appeared in the horse, was only a temporary stiffness, caused by the horse taking cold; and to impress the plaintiff with confidence in these and other representations, Neff appears to have been used; and he certainly did give the defendant a very high character, as a wealthy farmer of great respectability, who was unaccustomed to deal in horses, and whose representations might be implicitly relied on. Now, as a part of the means employed to impose on the plaintiff, we think this evidence was admissible. It was part of the transaction, by which the plaintiff was induced to repose confidence in the defendant. And it is no answer to say that some of the declarations of Neff are

Chadsey *v.* Greene.

immaterial.   Such as are now claimed to be so, were not objected to, on that ground, at the trial.   But the objection was to the whole of his declarations, on the ground that the defendant was not present when they were made; and as we think that so much of his conversation, as went to inspire confidence in the defendant as a man of probity, is admissible, there was no error in the court in admitting it.

The charge, taken as a whole, we think was adapted to the case, and was not incorrect in any principle of law ; and it substantially answered all the calls of the defendant for a charge upon particular points in the case.

It is true, undoubtedly, that a general warranty does not extend to visible defects.   But we see nothing in the charge, which conflicts with this principle.   On the contrary, the jury were so told expressly.   It appeared, however, that on one occasion, the plaintiff noticed the faltering of the horse, and on mentioning it to the defendant, he remarked that he noticed it also ; but said it was a slight temporary stiffness, caused by weariness, and exposure to cold on the steamboat, and in the cars.   Assuming, as we must on this point, that this was false, and, also, that the horse was known to the defendant to be permanently lame, we think the court was correct in saying to the jury, that seeing the horse limp, or falter, was not an answer to the plaintiff's claim, unless such limping, or faltering, indicated plainly and unequivocally, that the horse was unsound, and not merely laboring under a temporary injury.   The principle is as well stated in 1 Sw. Dig., 381, as any where.   Plain and obvious defects are not covered by a general warranty.   But if they are not discoverable by the eye ; if they require skill to discover them, though apparently the object of the senses, the warrantor is responsible.   A man may warrant against obvious defects; and the reason why a general warranty does not cover them, is because it is presumed they are not intended to be included in it, being known to the parties before the warranty is given.

But where they are not so known to the purchaser, as where he is blind; or the vendor uses art to conceal them, and succeeds in concealing them from the purchaser, the reason of the rule ceases, and the warrantor ought to be responsible for them. Taking the charge, then, in connection with the circumstances of the case, considering the means used to conceal the permanent character of the lameness, and the fact that the distinction, between a permanent and temporary lameness, is not very apparent to an unskilful man, we think the court was justified in saying to the jury, that the faltering ought, plainly and unequivocally, to indicate a permanent unsoundness, in order to prevent the defendant's liability upon the warranty.

It was made a point in the case, that the court did not respond to the claim of the defendant, that the jury should be specifically charged upon the special issue. In the defendant's second plea, the warranty is set out, and it is alleged that the horse was not otherwise unsound, except that he was lame, and the lameness was plain, open, and obvious to the sight, and the plaintiff saw, and knew, that the horse was lame; this is traversed, and the horse is in the replication, alleged to be otherwise unsound. It is obvious that there is nothing in this plea, that it was not competent for the defendant to prove under the general issue, and we think the charge, which we have been considering, sufficiently applicable to this issue, whether it be considered under the special issue, or as involved in the general issue.

It answered every point in issue in the case; and it was unnecessary for the court to say to the jury, that if the defendant had satisfied them that the second plea was true, he was entitled to their verdict, because this was involved in that part of the charge which informed them, "that the general warranty of soundness did not extend to defects, plainly discoverable by the eye, and obvious to the senses."

Upon the whole case, therefore, we do not advise a new trial.

In this opinion, the other Judges, STORRS & ELLSWORTH, concurred.

New trial not granted.