# COUNTY OF ADDISON,

### AT THE

## JANUARY TERM, 1869.

PRESENT :

Hon. JAMES BARRETT,
Hon. ASAHEL PECK,
Hon. WILLIAM C. WILSON, } ASSISTANT JUDGES.
Hon. JOHN PROUT,

---

## HORACE A. PINNEY *v.* SAMUEL ANDRUS.

*Contract.   Warranty.   Damages.   Memorandum.*

Where the parties to a sale of sheep on the first day settled the terms of a valid executory agreement in respect to them, and as a part of the agreement the vendor warranted the sheep sound and free from footrot, and on the second day, when the vendee went to pay for them as agreed upon, he discovered they were unsound, and believed they had the footrot, and the vendor repeated his statements made on the first day, that the sheep were sound and free from the footrot, that he would warrant them so, it was *held* that the two interviews constituted but one trade and one warranty.

A vendor *may* warrant against a defect which is patent and obvious as well as any other.

The plaintiff having alleged in his declaration a special warranty against the footrot, and as a breach, that the sheep had the footrot, is entitled to recover upon

proof of the breach, without regard to whether the existence of the disease was obvious and discoverable or was discovered and known by the plaintiff when he made the purchase.

In an action for false warranty the plaintiff may recover by proof of a representation known to be false by the party making it, on the ground of deceit, even though the representation which constitutes the deceit is not sufficient to constitute a warranty; or he may recover by proof of an express warranty and breach of it, though the representation or promise which constitutes the false warranty does not constitute deceit, because not known to be false by the party making it; and where the plaintiff claims to recover on this ground, it is not necessary to allege the *scienter*, and if alleged it need not be proved.

Upon the question of damages, in addition to the general rule of damages, the difference in value between the property sound and unsound, the jury should be instructed as to what evidence tends to show this difference. The instructions in this case *held* to be too broad and general.

The vendor of property sold with warranty against a specified defect, is liable for such damages as are the direct consequence of that defect, but not for any damage or injury to the property or vendee resulting from the neglect of the vendee to exercise ordinary care, diligence and skill in the treatment of the defect.

Testimony relating to items of damages not recoverable, should have been excluded.

A paper containing dates, figures and amounts, recently made, partly from recollection, and partly from original entries, bills and receipts, concerning matters that transpired long before, may be referred to by a witness, not for the purpose of refreshing his recollection as to the correctness of the entries, but to enable him to state with accuracy the details of things of which he had from recollection made a memorandum, but could not carry them in his mind so as to be able to repeat them without the aid of the paper.

ACTION for false warranty of certain sheep. Plea, the general issue. Trial by jury, at the June term, 1867, PIERPOINT, C. J., presiding. Verdict for the plaintiff, $1,500.

On the trial the plaintiff testified in substance that, on the 8th or 9th of December, he went to the defendant's house and saw the sheep, and examined them to some extent as to their wool, but not their feet, as he was lame and could not handle the sheep; that he asked the defendant if they were free from footrot, who replied that they were, and that he would warrant them so, that he never had the footrot on his farm, and that he would warrant them thorough-bred. That the plaintiff thereupon agreed to take the sheep at the price of $3,000, to be subsequently delivered by the defendant at the plaintiff's house, two and a half miles distant, and to be paid for by note; that he then paid the defendant $100 to bind the bargain; that on the 10th day of December, the plaintiff went again to the defendant's to pay for the sheep as agreed, and to trim and fit them for market, and then made an examination of their feet; that he then discovered that seven or eight of them had tender feet, and some of them had matter

down at the toe of the hoof; that he had been a dealer in sheep eighteen years, and had had much experience in the disease and knew it when he saw it; that he satisfied himself of the existence of the disease in the sheep. And the witness described the condition of the diseased feet at the time to be such as was proved by other evidence in the case, not contradicted, to denote an advanced state of the disease called footrot. It also appeared that when sheep run in wet and muddy places their feet become sore, something like footrot, but this is not so injurious and is readily cured. The plaintiff further testified that on making the discovery that the sheep were diseased, he became alarmed, and proposed to the defendant to rescind the trade, and the defendant to repay the $100 and keep the sheep: which the defendant refused to do, and repeated his statement that the sheep were sound and free from footrot, and that he would warrant them so, and that their lameness was caused by their running in the mud; and would warrant them thorough-bred.

The son of the plaintiff testified that he accompanied his father on the second occasion when he went to see the sheep; that they took with them at the time implements and medicine for doctoring the footrot, and applied it to the sheep as a remedy for that disease; that the footrot was then plain to be seen in some seven or eight of the sheep; that he was familiar with the disease, and had no doubt of it then or since. The further testimony of the witness went to corroborate that of the plaintiff as to what took place on that occasion.

The plaintiff testified that it was not on that occasion, but on the 14th day of December, that they carried medicine and doctored the sheep for the footrot; but testified that they did, on the 14th, apply medicine and treat the sheep for that disease, and stated the prescription used, which was one that appeared by other evidence to be usually employed and to be efficacious in that disease. The plaintiff further testified that the sheep were driven to his house on the 19th of December, a distance of about two miles; that they were put in sheds there over night, and driven next day six miles to Middlebury, where they were put in a car and sent to Buffalo, there transferred to another car and taken to

Newark, Ohio, arriving there on the 31st of December, where they were put in a barn belonging to a tavern frequented by drovers and sheep dealers; that they were kept there till April, 1865, during which time one was sold; that they were then taken to Washington county, Penn., were there kept till the end of May, and another one sold; were thence taken to Lawrence county, Penn., where they remained till April, 1866, during which time eleven were sold, and were then taken to Vernon, Ohio, where the balance were disposed of in May, 1866; that they had the footrot all the time, more or less, and were treated for it.

There was no evidence tending to show that they had the footrot until a considerable time after they arrived in Ohio, except the statement of the plaintiff himself, and that of his son, as to the condition of the sheep on the day of sale, and the statement of one other witness that, on their arrival there, one or two of them seemed lame, but from what cause he did not learn, and did not examine them.

The plaintiff's evidence also tended to show that the sheep did not take the disease at his place or on the journey to Ohio. The plaintiff then, for the purpose of showing the damages he had sustained, testified to the various sums of money expended by him in keeping and endeavoring to cure the sheep, and in removing them from place to place, and in looking after purchasers, including an item of $10 paid for advertising and for a newspaper puff; and also to the amount of time spent by him, and his estimate of its value; and testified that in all he did in these respects, he acted in good faith and in a manner which he considered judicious and supposed would produce the largest amount from the sheep.

In connection with the plaintiff's testimony relative to his expenditures and loss of time in taking care of the sheep and looking after purchasers, he produced a paper containing entries relative thereto, which entries were made, as he testified, by himself, shortly before the trial, partly from his general recollection, partly from original entries of his own, partly from entries made by his son, who went to Ohio with the sheep and assisted in taking care of them there for several weeks, and partly from bills

and receipts; but no original books or papers were produced at the trial until after the testimony was closed and the argument commenced, when the plaintiff brought into court and offered to the defendant's counsel all the original entries and papers from which the first mentioned paper was made up.

The defendant objected to the admission of any testimony relative to any of the items contained in said paper, on the ground that the matters embraced therein were too remote and speculative to afford a basis of recovery, or to be admissible under any legal rule of damages; and that if otherwise admissible, no averment of special damage in the declaration was sufficient to embrace them. The defendant also objected to the witness referring to the aforesaid paper in giving his testimony. Both these objections were overruled, and in giving his testimony relative to the expenditures, etc., the witness was allowed to, and did, refer to said paper, and testified as to all the items therein.

He further stated that the loss in the enterprise was, in his opinion, owing to the existence of the footrot in the sheep; that he believed he could have sold them readily at a profit of from $25 to $30 above cost and expenses, if it had not been for that, but was delayed in the sale and compelled to sell for reduced prices, and, as he thought, for that reason; that he sold them for the prices stated in the paper, and made a loss on the whole transaction of over $2,500, after crediting the sales and about $65 received for wool.

No evidence was given of any specific expenditure, nor of any specified amount of expenditure in doctoring or treating the sheep for the footrot, nor of any extra expense of keeping, except from the length of time they were on hand before the plaintiff could sell them, which the plaintiff claimed was owing to the disease.

The plaintiff stated one or two instances in which buyers looked at his sheep and talked of buying, but finally declined, in which he suspected, and had some reason to believe, that they discovered or were informed that the sheep had the footrot, and that was the reason why the sale was not effected; and in some other cases negotiations were broken off because the plaintiff refused to warrant the sheep free from footrot. Other than this, there

was no proof why sales were not made sooner, or at higher
prices, except the opinion of the plaintiff, as above stated, and
the testimony of the plaintiff and his son that the plaintiff sold
eleven other sheep, similar to the ones in question, but sound, and
taken to Ohio with them, at good rates, within a short time after
they arrived in Ohio.

The defendant gave evidence tending to disprove the warranty,
and to show that the sheep were, in fact, sound, at the time of
the sale, and were thorough-bred.  He further proved that the
disease known as the footrot is highly contagious, and is commu-
nicated almost invariably, if sheep run upon a road, pasture, floor
or other place where sheep affected with it have recently been;
that it will make its appearance in about nine days after exposure;
that it is very common in this part of the country, and exists,
more or less, in most of the best flocks and among the highest
priced sheep; that many of the most celebrated breeders have it
among their flocks, and are unable to eradicate it, owing to the
constant exposure of their sheep with others ; that it is more apt
to be found among fine, than coarse, sheep, and has not usually
been regarded as materially decreasing their price, though in the
western market it is much more objectionable; that it can easily
be cured by proper treatment, if the sheep affected by it are put
in a clean place, and kept from renewed exposure, and can be
cured under such circumstances, in small lots of sheep, in three
or four weeks.  The defendant also gave evidence tending to
show that the market in the west, for that class of sheep, had
fallen materially about the time the plaintiff went there with the
sheep in question; that the plaintiff made payments, on the note
given for the sheep, at various times from the February following
its date, to the next October, as shown by the indorsements on
the note, amounting in all to $2,200, without making any claim
for damages or deduction, or any complaint about the sheep ; that
the defendant subsequently brought suit against the plaintiff for
the balance due on the note, and that after that the plaintiff set up
this claim for the first time ; and the plaintiff admitted that he
never made any claim or complaint to the defendant until after
the defendant sued him, as above stated, except that he told him

in June, that he had had some trouble with the sheep but hoped to get through all right; and admitted that he was offended with the defendant for bringing suit against him in his absence, because he had offered him full security for the balance due.

The defendant requested the court to charge the jury as follows:

" 1. Both the plaintiff and his son positively state that on the 10th of December, before the sale was consummated, and before payment or delivery, they " discovered the footrot, plainly and actually existing in several of the sheep." They say they were familiar with the disease, could not be mistaken, and there was no doubt of the fact. They describe the symptoms then existing, which show, according to the testimony of Mr. Hammond, not contradicted, that the disease was far advanced, and they immediately commenced doctoring for it. Under these circumstances they cannot recover, even if there was a warranty that the sheep were sound.

" 2. That there was a previous valid agreement for a sale still remaining executory, when the discovery was made, is immaterial. Against that contract he had a defense, and a right to recover back his money. The warranty, that must be recovered on under the declaration, must be a part of the contract of sale. If, before that is consummated, he discovered the falsity of the previous warranty, he must then make his election.

" 3. The warranty, claimed at the time the sale was consummated, can not be recovered on, even if the previous warranty can. The falsity of it (if false) was then known to the plaintiff, by his own admission.

" 4. *       *       *       *       *       *       *       *

" 5. The rule of damages is simply the difference in value of the sheep at the time of the sale, in consequence of the defects warranted against, if found to exist. The plaintiff can not recover the deficiencies of his western speculation, nor can any accounting be gone into in respect to that transaction. Whether he made or lost in that matter. is a question too remote to be gone into. No evidence of specific expenses in doctoring is offered, or of any extra expense in keeping, more than would have been incurred if they had been sound."

The court declined so to charge, and instructed the jury as follows:

" That all that transpired between the plaintiff and the defendant on both days, the first when the $100 was paid, and the next

when the note was given and the trade completed, should be taken together and treated as but one trade and one transaction; that the agreement made on the first day was binding, but executory; that the title to the sheep did not then pass; the trade was commenced on the first day and consummated on the second; the two interviews are to be regarded as parts of the sale ; the property was not purchased at the first nor at the second; both should be taken together, and whatever was said at either interview should be regarded as part of the contract on which the plaintiff had a right to rely ; that it was claimed by the defendant that he would not be bound by the warranty if the plaintiff knew at the time of the defects warranted against. But for the purposes of this trial, the court instructed the jury that if the plaintiff did, in fact, believe that the sheep had the footrot at the time the sale was consummated, and proposed to the defendant to rescind for that reason, and the defendant refused, asserting that the sheep had not the footrot, and re-asserting that he warranted them not to have it, the plaintiff would have a right to go on and rely on his warranty, it being a matter of dispute between them as to whether the sheep had the footrot or not. He might then perfect the contract, and rely upon his warranty. So that, if the defendant did warrant the sheep to be sound, and they were unsound, and the plaintiff completed the contract, relying on such warranty, he would not be precluded from recovering because he discovered the unsoundness before the sale was consummated or completed.

As to what language and understanding constituted a warranty, as to the question whether the sheep were in fact unsound at the time, and as to the alleged warranty that the sheep were thorough-bred, the court charged in a manner not excepted to.

On the subject of damages the jury were instructed that the plaintiff was entitled to recover: first, the difference in value between the property, sound and unsound. And in this connection the character of the property, the price paid for it, and the use to be made of it, were to be taken into consideration. That in addition to this, the jury were at liberty to take into consideration the expense he was put to in consequence of the unsoundness. That one legitimate ground was the expense of curing and doc-toring. That the plaintiff was bound to take the best care he could, and use sound judgment and discretion, and due and reasonable care and economy in the curing of the sheep, and the expense of doing so he may recover. That the plaintiff had stated his efforts to cure the sheep, and to make disposition of them so as to be the least disastrous, his journeyings, expenses, efforts, etc. That upon this subject, what course was wise or unwise,

reasonable or unreasonable, for the plaintiff to pursue under the circumstances, was a question for the jury, upon all the evidence.

"In view of the whole, and upon the statement of the plaintiff as to his various journeys, expenses, etc., the jury were to say how far his course was reasonable, and how much of the expenses and loss so incurred should be recovered ; and that from such evidence as the jury had on the subject, they were to assess the damages, allowing to the plaintiff only such cost and expenses as they found had actually accrued in consequence of the unsoundness of the sheep."

After the verdict, the defendant filed a motion in arrest of judgment, which was *pro forma* overruled.

To the admission of the evidence objected to, to the refusal of the court to charge as requested, and to the charge on the subject of the request, as given above, and to the decision overruling the motion in arrest, the defendant duly excepted.

The declaration is as follows :

"In a plea of the case, for that the plaintiff, on or about the 10th day of December, 1864, at said Cornwall, at the special instance and request of the defendant, bargained with the defendant to buy of him twenty-seven sheep, as for full-blood-thorough-bred Spanish Merino, at and for the sum of thirty hundred dollars ; and the said defendant, well knowing said sheep not to be full-blood-thorough-bred Spanish Merino sheep, by then and there falsely and fraudulently warranting said sheep to be full-blood-thorough-bred Spanish Merino sheep, then and there deceitfully sold said twenty-seven sheep to the plaintiff for the said sum of thirty hundred dollars, which said sheep were not full-blood-thorough-bred Spanish Merino sheep, and were wholly worthless to the plaintiff ; and so the defendant falsely and fraudulently deceived the plaintiff."

In the second count, in addition to other averments :

"The plaintiff avers that in consequence of being so diseased, the said sheep were lame, and the plaintiff was put to great expense and trouble, in feeding, taking care of and endeavoring to cure the sheep so bought of the defendant.

"And also, in a further plea of the case, for that the plaintiff, on or about the 10th day of December, 1864, at Cornwall aforesaid, at the special instance and request of the defendant, did buy of him twenty-seven sheep as for sound, full-blood-thorough-bred Spanish Merino sheep, at and for the sum of thirty hundred

dollars; and the said defendant, well knowing the said sheep to be unsound and infected with a certain disease commonly called footrot, and well knowing that said sheep were not full-blood-thorough-bred Spanish Merino sheep, by then and there warranting said sheep to be sound and full-blood-thorough-bred Spanish Merino sheep, then and there deceitfully sold twenty-seven sheep to the plaintiff for the said sum of thirty hundred dollars, which said sheep were at the time of said sale unsound and infected with a certain disease commonly called footrot, and were not full-blood-thorough-bred Spanish Merino sheep, and were wholly worthless to the plaintiff, by reason of being infected with said disease, and by reason of not being full-blood-thorough-bred Spanish Merino sheep.

"And the plaintiff avers that he has heretofore been largely engaged in the business of breeding and selling sheep, and that as a further consequence of said disease, he has been seriously injured in his reputation as such breeder and dealer."

The declaration contained other counts, not material to be stated.

*J. W. Stewart* and *E. J. Phelps*, for the defendant.

*Briggs & Ormsbee, E. R. Wright*, and *Hard & Shaw*, for the plaintiff.

The opinion of the court was delivered by

WILSON, J. This is an action on the case, declaring in several counts for false warranty of certain sheep. The first question presented is whether the plaintiff, at the time of the trade, had such knowledge of the unsoundness complained of as to render an express warranty inoperative. The case shows that the parties, on the first day, settled the terms of a valid executory agreement; and the plaintiff's testimony tends to prove that, as part of that agreement, the defendant warranted the sheep sound and free from footrot, and that the plaintiff entered into the agreement relying upon said warranty. On the second day the plaintiff went to the defendant's to pay for the sheep as agreed, when he discovered they were unsound, and believed they had the *footrot.* He then offered to rescind the trade, requested the defendant to repay the $100, and keep the sheep, which the defendant refused to do. The defendant then repeated (as the tes-

timony tends to show), his statement made on the first day, "that the sheep were sound and free from the footrot; that he would warrant them so," and added, "that their lameness was caused by running in the mud." It is quite clear that there was but one trade; it was commenced on the first day, and consummated on the second. There was but one warranty as to the soundness of the sheep; it was made (if made at all), on the first day and re-asserted on the second. The two interviews are to be regarded as parts of the sale, and whatever was said or done at either interview, in relation to the trade, should be regarded as part of the contract on which the plaintiff had a right to rely. The plaintiff's testimony leaves no doubt that he had reason to believe, on examination of the sheep, on the second day and before the trade was consummated, that they had the footrot. But it seems to be now well settled that the rule of law which exempts a vendor from liability upon a general warranty of soundness, where the defect is perfectly visible and obvious to the unaided senses, does not extend to an apparent defect, to understand the true nature and extent of which requires the aid of skill, experience or judgment. Nor is the rule applicable to a case where the vendor has resorted to any acts or representations in respect to the property, intended or naturally calculated to throw the purchaser off his guard, and induce him to omit such thorough examination of the condition of the property as he might, and very likely would have made, if he had relied solely upon his own judgment in making the purchase. Nor has that rule any application to the case of a special warranty against a specified defect. 1 Parsons on Con., 576; Chitty on Con., 396; *Chadsey* v. *Green*, 24 Conn., 562; *Hill* v. *North*, 34 Vt., 604; 1 Smith's Lead. cases, 221. A vendor *may* warrant against a defect which is patent and obvious, as well as against any other. 1 Parsons on Con., 576, note h. The declaration alleges a special warranty against the footrot; the breach alleged is, that the sheep had the footrot. This breach of the special warranty was proved, and entitled the plaintiff to recover, without any regard to whether the existence of the disease was obvious and discoverable, or was discovered and known by the plaintiff

41

when he made the purchase. It is said by the defendant's counsel that the gist of the action is deceit; that a recovery in this form of action, either by proof of a representation known to be false by the party making it, or of an express warranty whether so known to be false or not, is for the fraud, and that the plaintiff could not be deceived by any representation when he saw and believed to the contrary of it. But it will be seen that where the plaintiff declares upon a *warrantizando vendidit*, alleging a *scienter* of the falsity of the warranty, though he may recover, either upon the express contract, or, if the *scienter* be proved, for a deceit, the grounds of recovery are independent of each other; one is governed by rules of law applicable to a contract, and breach of it; and the other by the law applicable to fraud perpetrated in making a contract, but the fraud is neither a part of the contract, nor essential to a recovery upon it. If a warranty be proved, it binds the defendant, by its own force, without proof of the *scienter*, if the warranty is broken. Every such warranty includes a representation; if known to be false by the party making it, the deceit is established, and the plaintiff's right of recovery, upon both grounds, is made out. But a representation, known to be false by the party making it, may be insufficient to constitute an express warranty, and yet be sufficient to entitle the plaintiff to recover for the deceit. A representation, if intended as a warranty, and so understood and acted upon by the parties in making the trade, may constitute an express warranty, and render the defendant liable upon the contract of warranty, and yet be insufficient to make him liable for deceit. So that the plaintiff, in this form of action, may recover, by proof of a representation known to be false by the party making it, on the ground of deceit, even though the representation which constitutes the deceit is not sufficient to constitute a warranty: or he may recover by proof of an express warranty and breach of it, though the representation or promise which constitutes the false warranty does not constitute deceit, because not known to be false by the party making it. Therefore, if deceit be proved, the plaintiff is entitled to recover for the fraud; or if he fail in this, but prove an express warranty, he must rely upon the warranty as a ground of

recovery. The warranty is a part of the contract of sale; the action, in respect to the warranty, is founded upon the contract, and his case must be made out in the same manner as if his action had been assumpsit on the warranty, and his right of recovery on the warranty does not depend upon proof of actionable deceit or fraud. If it were necessary to prove deceit where the plaintiff relies upon an express warranty as the ground of recovery, then the warranty would be of no avail, because proof of deceit is a sufficient ground of recovery without the aid of a warranty. In this form of action, as well as in assumpsit on the warranty, proof of the contract and breach renders the defendant liable, and where the plaintiff claims to recover on this ground, it is not necessary to allege the *scienter*, and if alleged it need not be proved. *Beeman* v. *Buck*, 3 Vt., 53; *Vail* v. *Strong*, 10 Vt., 457; 27 Vt., 720.

II. On the subject of damages we think the charge of the court can not be sustained. It first states the general rule of damages applicable to breach of warranty, and then concludes with instructions which would allow the jury to assess damages, resulting not only too remotely from the original unsoundness, (if resulting at all from that cause,) but also not recoverable under the declaration. The general rule, as to the grounds on which damages may be recovered for the breach of an express warranty, is not sufficiently definite for the guidance of the jury, but they should also be instructed as to what evidence tends to show the difference in value between the property *sound and unsound*, and what recoverable expenses have been seasonably, properly, and reasonably incurred, for doctoring and taking care of the sheep, in consequence of the unsoundness existing at the time of the sale. Each count of the declaration, relating to the footrot, contains sufficient allegations to sustain a recovery for the difference in value between the property sound and unsound, by reason of that disease. The second count contains the following allegations, viz.: "And the plaintiff avers that in consequence of being so diseased, the said sheep were lame, and the plaintiff was put to great expense and trouble in feeding, taking care of and endeavoring to cure the sheep so bought of the defendant." This is the only averment of special damage, except that relating to the infe-

rior value of the sheep, in consequence of the disease complained
of. There is nothing in the exceptions tending to show fraud,
nor tending to show breach of the alleged warranty that the
sheep were " full-blood, thorough-bred, Spanish Merino sheep ;"
but it would seem from the testimony that the plaintiff, on trial in
the county court, relied solely on the alleged warranty against the
footrot. The case states that the plaintiff, on the 10th day of De-
cember, went to the defendant's to pay for the sheep as agreed,
and to trim them for market; but there is nothing in the case
tending to show that the defendant knew at the time the plaintiff
bought the sheep he intended to take them to a foreign market,
nor tending to show that the defendent knew the purpose for
which the plaintiff made the purchase, or the use or disposition
he intended to make of the property. The case, therefore, stands,
in respect to the question of damages, upon the rule applicable to
breach of warranty, where the warranty is given without knowl-
edge on the part of the seller as to the purpose for which the
purchase is made, or the use or disposition intended to be made
of the property by the vendee, and the warranty can not be car-
ried by intendment of law beyond its literal terms.

The first ground or item of recovery relates to the difference
between the value which the property would have had at the time
of the sale and place of delivery in this state if it had been sound,
or corresponding to the warranty, and its value with the defect ;
or in other words, the difference between the value of the sheep
*sound* and *unsound*, the unsoundness being caused by the footrot.
Is the footrot a curable disease ? What length of time would
be required to cure it ? What would be the probable expense of
curing the disease, including the expense for doctoring and keep-
ing rendered necessary in consequence of the defect ? Would the
sheep be worth as much when cured as if they had not the foot-
rot at the time of the sale ; if not, how and to what extent would
their value be lessened in consequence of having had the disease,
that season of the year, so long only as would be required to ef-
fect its cure ? What other injury, besides the expenses for doctor-
ing and keeping the sheep, would follow as a direct consequence
of the defendant's breach of warranty ? Would the disease re-

turn again without renewed exposure of the sheep? When did the plaintiff first learn that the sheep were affected with the foot-rot, and did he, on discovering the disease, act in good faith and with common prudence and diligence in applying, and properly and thoroughly applying, such medicine as had been efficacious in that disease? These are inquiries that would arise in determining the difference in value between the sheep sound and unsound, and unless the attention of the jury is directed to the testimony as to these points, we could hardly expect they would come to a correct result on the question of damages. The testimony tends to show that the footrot in sheep "can easily be cured by proper treatment if the sheep affected by it are put in a clean place and kept from renewed exposure, and can be cured, under such circumstances in small lots of sheep, in three or four weeks." The plaintiff suspected, when he bargained for the sheep, they had the footrot; he believed at the time the trade was consummated they then had that disease; and within three or four days thereafter he knew it was the footrot that caused their unsoundness. When the plaintiff discovered that the sheep had the footrot, and knew the remedy, or could on inquiry ascertain it, he was bound to act in good faith and to exercise ordinary care, skill and diligence in doctoring the sheep and endeavoring to cure the disease. The plaintiff could not delay applying the remedy and visit the consequences of such delay upon the defendant; but he was bound to proceed with all reasonable diligence and skill and apply the proper medicine thoroughly, and continue its application for such length of time as might be reasonable and necessary to eradicate the disease. The vendee in general has the possession and control of the property and treatment of the disease, and any relaxation of the rule above stated as to the care, diligence and skill required of him in respect to the treatment of the unsoundness, would render it uncertain whether the injury resulted directly from the original unsoundness, from neglect of the vendee seasonably and properly to apply the remedy, or from a cause that did not exist at the time of the sale. The case states that the plaintiff did, on the 14th of December, apply medicine and treat the sheep for the footrot; but whether he further treated them

for, that disease after that, and while they remained in Vermont, does not appear. It appears that on or about the 20th of December, the sheep were taken from Middlebury in this state to Newark, Ohio, where they arrived on the 31st of December, so that the time they remained in Vermont, after the plaintiff discovered the disease in the sheep, was not sufficient according to the tendency of the evidence to effect a cure, even if the disease had been properly and thoroughly treated. The first item in the plaintiff's bill, relating to treatment of the disease, is for doctoring them from June 21, 1865, to April, 1866. The plaintiff says the sheep had the footrot all the time more or less, and were treated for it. By the expression, "*all the time*," the plaintiff evidently means, from the time he purchased the sheep till he sold them, about one half of which, he says, were sold in May, 1866 ; so that according to the plaintiff's account of the matter, the footrot existed in the sheep about eighteen months, and he sold them while so diseased. Assuming then, what the uncontradicted evidence tends to prove, namely, that the footrot can easily be cured in three or four weeks, by proper and thorough treatment, we conclude that the disease in the sheep, for so long a period, was in consequence of the neglect of the plaintiff to make proper and sufficient applications of the remedy for the unsoundness existing at the time he purchased them ; or in consequence of disease contracted by renewed exposure of the sheep after that time.

Would a prudent man, knowing that a lot of sheep were affected by the footrot, knowing it could be cured, and having paid such a price for them, take them to market before making a suitable effort to cure the disease ? However that may be, we think that the plaintiff, knowing as he did that the sheep were thus diseased and understanding it could be cured, should not be allowed to enhance the damages against the defendant, by his wandering with the sheep from place to place and from market to market, in the manner stated by him in his testimony. He ought to have known that such management of the sheep, and effort to market them while so diseased, would result in great loss. The vendor of property, sold with warranty against a specified defect, is liable for such damages as are the direct consequence of that defect;

but he is not liable for any damage or injury to the property or vendee resulting from the neglect of the vendee to exercise ordinary care, diligence and skill in the treatment of the defect warranted against. *Hitchcock* v. *Hunt,* 28 Conn., 343 ; *Marlett* v. *Clary,* 20 Ark., 251. It is evident, upon the plaintiff's own showing as to the manner in which he managed the property and treated the disease after he discovered the unsoundness, that the expenses thereby incurred by him furnish no guide in assessing such damages as are the direct consequence of the defendant's breach. Under the circumstances of this case, we think the question of damages must, as far as practicable, be tried just as it would have been tried the day on which the plaintiff first discovered the sheep had the footrot. Where the disease or unsoundness is curable, the difference in value between the property *sound* and *unsound* would depend, among other things, upon the expenses and cost of curing the unsoundness covered by the warranty. Assuming that the disease in those sheep might have been cured by proper and sufficient treatment, thereby incurring reasonable and justifiable expenses, one mode of arriving at the difference in value between the property *sound* and *unsound* would be to inquire, first, into the probable expenses of doctoring and taking care of the sheep during such reasonable time as would have been necessary to cure the disease if it had been properly and thoroughly treated from the time the plaintiff first discovered the unsoundness and its cause ; second, inquire into the probable expense for keeping the sheep during such time as would be required to cure the disease, or such time as the disease, seasonably and properly treated, would require the sheep should be kept for an advantageous sale of them, meaning such expenses for keeping as would not be incurred if the sheep had been sound. There is no such daily use of sheep, or profits realized daily, while keeping them, as may be derived from horses or oxen when kept and used for team work ; but the keeping of sheep becomes necessary, in order to derive from them annual profits, which arise from the growth of their wool, the growth of the sheep, or their annual increase, and it is in one or more of these ways that the expense of keeping sound sheep is compensated and in the same way the

expenses of keeping unsound sheep may be in part compensated, unless the nature or extent of the unsoundness be such as to render it unprofitable to keep them for any purpose. Third, inquire whether the plaintiff would have sustained damages, as a direct consequence of the defect warranted against, in addition to the expenses for doctoring and keeping the sheep, if he had treated the disease thoroughly and sufficiently from the time he first discovered its existence in the sheep. If besides these expenses the plaintiff would sustain additional injury as the direct consequence of the defendant's breach, it would be a ground of recovery, if covered by the declaration. The plaintiff would not be entitled to recover any thing on the ground of a loss of profits.

III. From the views above expressed as to the rule of damages, it follows that so much of the testimony objected to, as relates to items not recoverable, should have been excluded. It is also objected by the defendant that the plaintiff was improperly allowed to testify from or refer to a certain memorandum produced by him on trial. It is obvious that a memorandum made from recollection merely, and so long after the alleged transaction to which it refers, would not be likely to aid the recollection of the witness, or add to the weight of his testimony. If the court allowed the paper as evidence generally to refresh the recollection of the witness, we think it was wrong. But as a paper containing dates, figures and amounts within the recollection of the witness, but being matters which he could not carry in his mind, it might be referred to by him, not for the purpose of refreshing his recollection as to the correctness of the entries, but for the purpose of enabling him to state with accuracy the details of things of which he had from recollection made a memoradum, but could not carry them in his mind so as to be able to repeat them without the aid of the paper.

Judgment of the county court reversed and case remanded.