LUCIUS C. CHASE and others *vs.* SPRINGVALE MILLS COMPANY.

York.    Opinion May 21, 1883.

*Evidence. Deceased witness. Sick witness. Depositions. Practice.*

When the deposition of a witness has once been legally taken and used at a trial in court, and the witness is dead, the deposition is admissible in evidence, in a subsequent proceeding between the same parties, and involving the same issue.

Whether the issue in the two cases is the same, or not, is in the first instance a question for the presiding justice to decide. And his decision is conclusive, when the exceptions do not afford any basis for a determination that an error in this respect was committed by such justice.

It is not beyond the limits of good practice, or a violation of any settled rule of evidence, to admit in evidence the deposition of a witness, who, by reason of sickness is unable to attend court, which was taken upon the same issue, between the same parties, and both parties had fully exercised the right to examine the witness, when no surprise or sudden change in the aspect of the case, to render the right of further examination valuable, is alleged, if

the court in view of all the circumstances determines that the ends of justice would be better served by receiving the deposition than by interrupting the trial.

ON EXCEPTIONS and motion to set aside the verdict.

An action of the case for disturbing the free and natural flow of the water in Mousam river, whereby the plaintiffs were unable to run on full speed and time their woolen mills in Sanford.

The writ was dated August 30, 1875. The plea was general issue. The verdict was for the plaintiffs in the sum of ten hundred and seventy-five dollars.

The exceptions state that at the trial the plaintiffs offered in evidence the deposition of Jonathan Tibbetts, 2nd, deceased. The defendant objected to the same, assigning, among other reasons, that it was taken in another cause, a chancery cause, and not for the claims set up in this action. The court admitted the deposition, excluding, on objection, one interrogatory. The plaintiffs also offered the deposition of Joel Moulton, deceased, and the defendant made the same objections as to the deposition of Tibbetts. The court admitted the deposition, excluding, on objection, certain interrogatories.

The plaintiffs offered the deposition of James O. Clark, and introduced the testimony of Daniel Clark, relative to him, as follows :

" I am brother of James O. Clark. I last saw my brother last Monday. (This Thursday, P. M.—Reporter.) It was just before sunset. He was at Wells beach ; he was sick with typhoid fever. He had been so sick for the last week the doctor did not allow him to have any company, any more than his attendants. Monday, when I was there, he was delirious, out of his head. That was the first day he had been that way. I had a postal yesterday that was written Tuesday, saying he was about the same."

The defendant objected for the reasons assigned against the other depositions, and because the deponent was not a deceased person. The court admitted the deposition excluding, on objections, certain interrogatories. The defendant called Samuel

Webber, who testified that he resided in Manchester, New Hampshire; occupation, civil engineer. . . .

" I drove all around the country, up and around Mousam pond; noted the water shed on either side. Afterwards, in company with persons familiar with the country, I sketched the outline as nearly as possible of the line of water-shed, that fed in above Emery's mills. On that I made an estimate and calculation."

The defendant offered to prove by this witness, his calculations as such engineer as to the amount of the natural supply of water to that stream during the months of July and August, 1875, and the same was excluded on the plaintiffs' objections.

*William J. Copeland,* for the plaintiffs, cited: *Jones* v. *Roberts,* 65 Maine, 273; *Jackson* v. *Jones,* 38 Maine, 185; *Holbrook* v. *Knight,* 67 Maine, 244; *Webster* v. *Calden,* 55 Maine, 165; *Allen* v. *Lawrence,* 64 Maine, 175; 1 Greenl. Ev. § 63; 1 Whart. Ev. § 79.

*R. P. Tapley,* for the defendant, contended, that the depositions were inadmissible as depositions, and that being taken between the same parties in another cause does not render them admissible. The introduction of evidence by way of depositions, is regulated entirely by statute. R. S., c. 107; 2 Pick. 65; 4 Allen, 268; *Scott* v. *Perkins,* 28 Maine, 22.

That the testimony of a deceased witness, given in a former trial of the same case, may be proved on a second trial, is well settled. Beyond this, the authorities are not uniform. In this state it must be confined to the same case. 14 Maine, 201; 53 Maine, 258; 53 Maine, 149; see *Melvin* v. *Whiting,* 7 Pick. 79; 1 Whart. Ev. § 177; 1 Greenl. Ev. § 164; *Com.* v. *Richards,* 18 Pick. 434; *Warren* v. *Nichols,* 6 Met. 261; *Woods* v. *Keyes,* 14 Allen, 236; *Yale* v. *Comstock,* 112 Mass. 267; *Costigan* v. *Lunt,* 127 Mass. 354; *Orr* v. *Hadley,* 36 N. H. 575; *Hatch* v. *Brown,* 63 Maine, 419.

The deposition of James O. Clark was that of a living witness within the jurisdiction of the court.

The general rule admitting the use of the testimony of a witness at a former trial of the same cause, is limited to the death of the

witness. By some courts the rule has been extended to cases of permanent insanity and residence beyond the jurisdiction of the court, and in one case where the witness by reason of old age and ill health had entirely lost his memory.

But one case can, I think, be found in this country where the testimony of a witness then living was admitted on account of ill health and inability to attend court. That case gave no consideration to the question, and has been severely criticised in the notes upon the subject in Phillips' Ev. C. and H. notes by Edwards; see 2 Best Ev. § 496; Starkie Ev. (Sharswood Ed.) 61, 409; 1 Taylor Ev. § 472; 1 Whart. Ev. 177; 1 Greenl. Ev. 163.

The old case of *Lutterell* v. *Reynell*, 1 Mod. Rep. 284, is the basis upon which the matter of sickness got into the elementary works, and that case never passed any court *in banc* in review.

In the case of *Harrison* v. *Blades*, 3 Campbell, 457, the subject came up and Lord ELLENBOROUGH said: "I cannot dispense with the attendance of a witness who is still alive and within the jurisdiction of the court, so as to admit evidence of his handwriting in the same manner as if he were actually dead. No case has yet gone so far. . . . If such relaxation of the rules of evidence were permitted there would be very sudden indispositions and recoveries. . . . The party who would avail himself of his testimony must move to put off the trial." See *LeBaron* v. *Crombie*, 14 Mass. 234; *State* v. *Staples*, 47 N. H. 113; *Powell* v. *Waters*, 17 Johns. 176; *Weeks* v. *Lowerre*, 8 Barb. 530; *Wilbur* v. *Selden*, 6 Cow. 162; *Crary* v. *Sprague*, 12 Wend. 41; 2 Searg. & Rawle (Pa.), 84; 17 Searg. & Rawle (Pa.), 409; *Bergen* v. *People*, 17 Ill. 426; *Hobson* v. *Doe*, 2 Blackf. 308; 10 Grattan (Va.), 722; 33 Ala. 380; 1 Nott & McCord (S. C.),* 409.

In the last case the instances enumerated are: (1.) Where witness is dead. (2.) Insane. (3.) Beyond the sea. (4.) When kept away by the adverse party. *Howard* v. *Patrick*, 38 Mich. 795; *Kellogg* v. *Secord*, 42 Mich. 318; *Sullivan* v. *State*, 6 Tex. App. 319; *Collins* v. *Com.* 12 Bush. (Ky.) 271.

SYMONDS, J. When the deposition of a witness has once been legally taken and used at a trial in court, and the witness is dead, there is no doubt of the admissibility of the deposition in evidence in a subsequent proceeding, between the same parties and involving the same issue. In such case, it is not received by force of the statute regulating the taking of depositions, nor because it is a deposition; but by a rule of the common law, upon general principles of evidence, and because it is the testimony of a deceased witness, given upon the present issue between the parties, under all legal conditions and requirements as to the right of examination and cross-examination. 1 Greenl. Ev. § § 168, 553; *Railroad Co.* v. *Howard*, 13 How. 334; *Emery* v. *Fowler*, 39 Maine, 326; *Bank* v. *Hewett*, 52 Maine, 531.

Whether the issue in the two cases is the same, or not, is in the first instance a question for the presiding judge to decide, and a ruling or finding by him on that point can be reversed by the law court only when the case discloses an error therein; just as the question, " whether the witness who is called as an expert has the requisite qualifications and knowledge to enable him to testify, is a preliminary question for the court. The decision of this question is conclusive, unless it appears upon the evidence to have been erroneous, or to have been founded upon some error in law." *Perkins* v. *Stickney*, 132 Mass. 217.

The exceptions in this case afford no basis for a decision that an error in this respect was committed by the court at the trial. It is not shown that the issue in the suit in chancery, in which the depositions were taken, was different from that in this action, and an error in the determination of a preliminary question by the court is not to be presumed, when none is found in the case.

Exception is next taken to the admission, under circumstances stated in the report, of a similar deposition of a witness whose attendance was prevented by sickness; the ruling having been given on Thursday, and the fact being proved that on Monday of that week, the witness, being then at some distance but within the jurisdiction, had a typhoid fever and was delirious, and for

the last week only his attendants had been allowed by his physicians to be with him.

The facts are very similar to those of an old case, *Lutterell* v. *Reynell*, 1 Mod. Rep. 284, where a witness on his way to court "fell so sick that he was not able to travel any farther, and his depositions in chancery, in a suit there between these parties about this matter, were admitted to be read."

Referring to the case just cited, it is said in 1 Whart. Ev. § 179 : "The same liberty would apply to depositions taken in a prior case between the same parties." The rule is stated in substantially the same way in 1 Greenl. Ev. § 163 ; and in 2 Starkie, 262, *et seq.* with reference to cases bearing directly or indirectly upon the question. Authorities directly in point are not numerous.

In *Miller* v. *Russell*, 7 Mart. N. S. 266, during the temporary sickness of a witness, the court of Louisiana allowed his testimony at a former trial, notes of which had been carefully kept, to be given in evidence, remarking that "to have examined him again, laboring under disease, would have afforded no better evidence, perhaps not so clear, as that which had been obtained from him on the former trial."

In Judge COWEN's note (441) to Phillip's Ev. which reviews the authorities on this subject, the decision in *Miller* v. *Russell*, is referred to as one "which does not go beyond the reason of receiving a deposition *de bene esse*, and as easily vindicable on principle ;" while another decision in the same volume, *Noble* v. *Martin*, p. 82, extending the rule to the case of a deputy sheriff, absent on official duty, is disapproved ; and the note concludes, "Those authorities which come nearest to the liberal principle, on which secondary evidence is generally received, are less anomalous and, therefore, more scientific than the narrower decisions."

It is true the authorities differ upon the degree of mental or physical disability which will justify the admission of such evidence, and, to some extent, upon the question whether it

should be received at all, except upon proof of the permanent and hopeless incapacity of the witness to testify. We have no doubt the general practice of the courts would be to delay a trial, during the temporary illness of a witness, rather than to receive any kind of secondary evidence of his former testimony, in which there might be a new element of error, or which might not be justly and fully adapted to the present exigency of the case on either side. There was a case in this state in 1846, not reported, *State* v. *Canney*, 9 Law Rep. 408, in which oral evidence (aided by minutes) of what a deceased witness testified at a former trial of a capital case was received, while the same was rejected as to a witness who had become insane, it not appearing that the insanity was confirmed and hopeless.

It is doubtless true that objections to secondary evidence of this kind have peculiar force in criminal trials. 2 Phill. Ev. 521, N. 437; 2 Starkie Ev. 487, 488; 1 Whart. Ev. § 179; *Rex* v. *Savage*, 5 C. & P. 143; *State* v. *Staples*, 47 N. H. 113.

Undoubtedly in this case the discretion of the court would have been exercised to postpone the trial, rather than to receive the secondary evidence, had it been offered in any less certain and satisfactory form than that in which it was presented; but when it was all in a deposition taken upon the same issue and between the same parties, where both had fully exercised the right to examine the witness, and where no surprise, or sudden change in the aspect of the case, to render the right of further cross-examination valuable to the defendants, was alleged, if the court in view of all the circumstances determined that the ends of justice would be better served in the particular case by receiving the deposition than by interrupting the trial, we are not prepared to say, after a careful examination of the authorities cited in the able brief for the defendants, and by the authors to whom we have referred, that such a decision was beyond the limits of good practice, or a violation of any settled rule of evidence. We think, in this respect, the case does not show that an error in law was committed at the trial. The law does not wholly exclude the physical inability of the witness to attend, as a reason for admitting such evidence, and there should be apparent error or

injustice in the ruling of the presiding judge in the particular case, before his decision should be reversed.

The quantity of water naturally flowing in a stream during the months of July and August, 1875, was not a fact to be proved by the calculations of an engineer, whose only means of information were that he visited the region once during that period, drove around the country in company with persons familiar with it, and sketched an outline of the water-shed as nearly as possible. Many of the facts which must have affected the supply of water during those months, according to the statement of the engineer, could have been known to him, if at all, only from information received, and it does not appear that any hypothetical questions to him were excluded.

It is the opinion of the court that a new trial cannot be granted upon the motion.

*Motion and exceptions overruled.*

APPLETON, C. J., BARROWS, DANFORTH, VIRGIN and PETERS, JJ., concurred.