IN RE ESTATE OF ALONZO A. MARTIN.

January Term, 1918.

Present: WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed May 16, 1918.

*Wills—Testamentary Capacity—Mental Condition of Testator—
Trial—Correct Ruling for which Wrong Ground is Sug-
gested—Examination of Witnesses—Discretion of Court—
Leading Questions—Evidence—Weight—Appeal and Error
—Regularity of Proceedings Below Assumed by Supreme
Court—Grounds of Objection Not Presented Below—Trial
—Remarks of Counsel— Admissibility of Evidence—Excep-
tions—When Not Sustained—Testimony at Former Trial—
When Admissible—Finding of Inability of Witness to At-
tend—Construction of—Waiver of Right of Objection to
Testimony—Bill of Exceptions without Reference therein
to Transcript—Experts—Opinion Evidence—When Inad-
missible—Mental Capacity—Jury Question—Exceptions
Not Extended Beyond Point Raised Below.*

When the issue of testamentary capacity is raised, the inquiry is con-
ducted under liberal rules of procedure and it is competent, as bear-
ing on this question, to show the person's mental condition at any
reasonable time before or after the testamentary act, the range of
inquiry depending upon the character of the alleged unsoundness
and other circumstances, and resting largely in the discretion of
the trial court.

A ruling, for which a wrong ground is suggested, is not error, if it is in
fact correct.

It is within the discretion of the trial court to allow testimony, which
is not in the line of strict cross-examination, where it is manifest
that its admission does not result in any surprise or prejudice to
the opposing party, and the fact that the other party's case is in
some respects anticipated thereby is of no consequence.

It is within the discretion of the trial court to allow leading and sug-
gestive questions to be asked.

The facts that a witness as to testamentary capacity had only known
the decedent for about three weeks before his death, and that he

was then very weak and sick, affected the weight of her testimony and not its admissibility.

The question whether a witness has had an adequate opportunity of observation in circumstances calculated to result in an inference helpful to the jury, is largely one of administration and within the discretion of the trial court.

Where the record does not show that a proper foundation for the admission of certain testimony was not laid on trial, the Supreme Court will assume that it was laid.

Where, in an appeal from probate, the person who drew the will testified that the conduct of decedent's wife at the time was of such a nature that he asked for a separate room in which to complete the business, it was not error to allow the wife, in answer to a question whether her conduct was such that there was any reason for the request, to testify that she might have been a little excited, but was not loud or quarrelsome.

A ground of objection to evidence, not presented in the trial court, will not be considered in Supreme Court.

Where counsel, in good faith, after explaining his claim with regard to evidence offered by him, which was excluded, made a further explanation in the hearing of the jury, who were cautioned by the court not to try the case on statements of counsel, but on the evidence, an exception to such remarks of counsel which were not withdrawn by him will not be sustained.

In an appeal from probate, evidence that formerly the decedent had confidence in the business ability of the witness and entrusted her with certain business matters, but from and after a certain time, his opinion of and mental attitude towards her business ability materially changed, is admissible upon the issue of testamentary capacity, it being the theory of the contestant that a decided change came over decedent at or about this time.

Where there is not enough shown by the record to make certain testimony either admissible or inadmissible, no harm is shown and an exception to its admission will not be sustained.

In a civil case, the testimony of a witness given at a former trial between the same parties may be introduced if the witness has since died or become insane, is sick and unable to testify, is out of the jurisdiction, or has been kept away by the other party, and it will be assumed that the rules laid down for the guidance of the trial court in determining the preliminary questions of fact have been followed, in the absence of a showing to the contrary.

The finding of the trial court that a witness, whose testimony at a former trial between the same parties was offered in evidence, was unable to attend court or give a deposition, will be assumed to mean that he was physically unable to do so.

Where the testimony is not before the Supreme Court, and from the record it cannot be said that certain testimony could not be admissible in any state of the evidence, an exception thereto will not be sustained, all intendments being in favor of the ruling.

Where evidence comes in without objection, all right of objection is waived, and it is within the discretion of the trial court whether to hold the party to this waiver, or to strike out the testimony.

Where the transcript is not referred to, the Supreme Court can only consider what expressly appears in the bill of exceptions.

The admission in evidence of an opinion of an expert witness, based upon all the evidence in the case, which included the conflicting opinions expressed by other witnesses, who had preceded him, is reversible error.

It was error to allow a remark of counsel that there was a disposition on the part of the other side to interfere with the examination of a witness, to go unwithdrawn and unrebuked; but whether or not such error was prejudicial is not decided.

In determining the mental capacity of a testator, the jury may consider the naturalness or unnaturalness of the will.

A specific exception will not be extended in Supreme Court beyond the precise point made in the court below.

APPEAL FROM PROBATE. Trial by jury at the Special June Term, 1917, Windsor County, *Stanton*, J., presiding. Verdict for contestant. Proponent excepted. The opinion states the case.

*Davis & Davis* and *Pingree & Pingree* for proponent.

*Charles Batchelder, William Batchelder* and *Frank Plumley* for contestant.

POWERS, J. On January 26, 1916, Alonzo A. Martin executed an instrument purporting to be his last will and testament. The validity of this instrument is here in question, and the only ground of contest is that he was then of unsound mind and incompetent to make a will. The trial below was by jury

and resulted in a verdict against the instrument. The case comes up on exceptions saved by the proponent.

Witnesses for the contestant were allowed, subject to the proponent's exception, to relate facts and observations covering an extended period prior to the execution of the instrument in question, and subsequent thereto down to Mr. Martin's death, and thereon to predicate opinions that he was not of sound mind. We cannot say that such evidence was not material. The *factum probandum*, was, of course, his mental condition on January 26, 1916. But when the issue of testamentary capacity is raised, the inquiry is conducted under liberal rules of procedure (*In re Esterbrook's Will*, 83 Vt. 229, 79 Atl. 1), and it is competent, as bearing on this question, to show the person's mental condition at any reasonable time before or after the testamentary act. In re *Wheelock's Will*, 76 Vt. 235, 56 Atl. 1013. Just how wide a range is permissible in a given case depends upon the character of the alleged unsoundness and other circumstances, and rests largely in the discretion of the trial court. 3 Elliott Ev., § 2692. We are not convinced that too much latitude was here allowed.

One of these witnesses was E. D. Ainsworth, a subscribing witness to the will, and it is claimed by the proponent that the contestant was allowed to examine him under the rules governing a cross-examination, and it is insisted that this was error. The argument is that the law required the proponent to introduce this witness, and that such a witness is not vouched for by the party producing him; that there is no cross-examination of such a witness in the ordinary sense of the term; and that it was unfair and prejudicial to allow it in this case. It is plain from the record that the court treated the matter as a cross-examination, but it is equally plain that it allowed it to thus proceed as a matter of discretion. So if any wrong ground was suggested for the ruling, the ruling itself was right, and no error appears. *Fairbanks* v. *Stowe*, 83 Vt. 155, 74 Atl. 1006, 138 Am. St. Rep. 1074.

The contestant was allowed to take answers from some of the witnesses which were not in the line of strict cross-examination, and the proponent excepted. But no error is shown. It is not made manifest that the admission of this testimony in this way resulted in any surprise, or prejudice to the proponent's case, and it was therefore within the discretion of the court to allow it. *Slack* v. *Bragg*, 83 Vt. 404, 76 Atl. 148; *State* v. *Pierce*, 87

Vt. 144, 88 Atl. 740. The fact that in some respects this was to anticipate the contestant's case is of no consequence. *In re Mason's Will*, 82 Vt. 160, 72 Atl. 329.

The contestant was allowed, subject to exception, to ask leading and suggestive questions to certain witnesses. This, too, was within the discretion of the trial court. *Berry* v. *Doolittle*, 82 Vt. 471, 74 Atl. 97.

The opinion of the decedent's mental condition given by Mary Hope, the trained nurse who took care of him from February 15, 1916, to his death on March 6, of the same year, was not inadmissible. It is true that the witness had not previously known the decedent, and that he was then very weak and sick; but these facts only affected the weight of her testimony and not its admissibility. *Foster's Exrs.* v. *Dickerson*, 64 Vt. 233, 24 Atl. 253. Here, again, the law does not lay down a hard and fast rule, and the question whether the witness has had an adequate opportunity of observation, in circumstances calculated to result in an inference helpful to the jury, is largely one of administration, and within the discretion of the trial court. 3 Chamb. Ev., § 1912.

Mrs. Martin, the widow of the decedent and the real contestant, was a witness. In her direct examination, she was asked by her counsel if there came a time when it appeared to her that her husband became suspicious that she was trying to beat him in money matters. Subject to exception, she replied in substance that there did come such a time and that it was in 1915. The only point now made in support of this exception is that no foundation was laid by showing the particular facts from which this inference was drawn. A sufficient answer is, that the record does not show that such a foundation was not laid, and therefore we will assume that it was. *Sargent* v. *Barton*, 74 Vt. 24, 52 Atl. 72.

It appears that Gov. Pingree drew the will in question, and went to the decedent's residence for that purpose. He testified that while he was there, Mrs. Martin's conduct was so strenuous and the scene she made so stormy, that he asked for a room where he could have Mr. Martin alone to complete the business. When Mrs. Martin was on the stand, her counsel asked her if her conduct on that occasion was such that there was any reason for Gov. Pingree's asking for a separate room. To this the proponent objected; and subject to exception, the witness was al-

lowed to answer that she might have been a little bit excited, but that she was not strenuous, nor loud, nor quarrelsome. The argument of the proponent assumes that the witness was allowed to express an opinion on the propriety of Gov. Pingree's action. But this is not what the witness did; she simply stated the facts as she claimed them to be. This is just what counsel then said they were willing she should do, and just what she could properly do.

Mrs. Martin was allowed to testify to a conversation had with her husband in the fall of 1897, which resulted in an arrangement whereby she took on the management of the business at Martinsville. To this the proponent excepted. The objection below was specific. It was that Mr. Martin being dead, the living party "shouldn't be allowed to come in here and swear contracts onto the dead one." The only point here made is that the statute does not allow one spouse to testify to a conversation with the other, and that the death of the latter does not affect the question. Here, then, is a new objection not made below. In these circumstances neither point is considered. *Jewell* v. *Hoosac, etc. R. R. Co.*, 85 Vt. 64, 81 Atl. 238; *Goslant* v. *Calais*, 90 Vt. 114, 96 Atl. 751. Exactly the same situation exists regarding the conversation about the keys to the box of securities, and for the same reason the exception is overruled.

During Mrs. Martin's examination, her counsel asked her a question which was objected to. Thereupon, counsel explained his position in regard to the question, and the court ruled it out. Contestant's counsel then (apparently in good faith) made a further explanation of his purpose, but the ruling was adhered to. The proponent claimed an exception to this further explanation unless it was withdrawn. Counsel refused to withdraw it and an exception was allowed. The court then turned to the jury and cautioned them against trying the case upon statements by counsel, and admonished them to be guided only by the evidence admitted. The exception is not sustained. However it might have been if the record showed that counsel had attempted to get something improper before the jury by his statement to the court, or, however it might have been if the matter had not been adequately handled by the court, it must be held on the record that the remarks were not improper and that there was no obligation to withdraw them.

Clara Dole, a sister of Mrs. Martin, was a witness for the contestant. She gave testimony tending to show that formerly Mr. Martin had confidence in her business ability and intrusted certain business matters to her charge, but that from and after the winter of 1914-15, his opinion of and mental attitude toward her business ability materially changed. This evidence was properly admitted. It was the theory of the contestant, and her evidence tended to show, that a decided change came over Mr. Martin at or about this time. That such a change is evidence of failing mentality is well recognized. The testimony of Mrs. Dole was confirmatory of this claim and admissible as a manifestation of the change referred to. This witness also testified that when she was at the Martin place, there was money in the purse. There is not enough shown by the record to make this testimony admissible, nor is there enough shown to make it inadmissible. No harm is shown and the exception is not sustained.

Michael Ryan was a witness before the probate court when the issue here was there tried out, and his testimony was taken by a stenographer. A transcript of that testimony was offered below, and the only objection made to its admission was that Mr. Ryan was then in the State, and that it was only when the witness had gone out of the jurisdiction that such evidence was admissible. The court found the fact to be that Mr. Ryan was within the State, but unable to attend court as a witness or to give a deposition. The rule regulating the use of the former testimony of an unavailable witness differs in different jurisdictions. The one generally obtaining is that in a civil case, the testimony of a witness given at a former trial between the same parties may be introduced if the witness had since died or become insane, is sick and unable to testify, is out of the jurisdiction, or has been kept away by the other party. Some well-recognized rules are laid down for the guidance of the trial court in determining the preliminary questions of fact, and in the absence of any showing to the contrary, we assume that these were duly observed. So, too, we assume that the finding that this witness was "unable" to attend court or give a deposition means that he was too ill to do so. This afforded a sufficient reason for admitting his former testimony, 10 R. C. L. 966; 2 Chamb. Ev., § 1646; 2 Wig. Ev., § 1406; Stephen's Dig., 159, et seq.; Chase v. Springvale Mills Co., 75 Me. 156; Perrin v. Wells, 155 Pa. 299, 26 Atl. 543.

When the transcript of Mr. Ryan's testimony was presented, certain questions and answers were stricken out by agreement of counsel, and the remainder was read to the jury. The proponent excepted to the failure of the court to strike out certain statements therein made by the witness complimentary to the contestant and her care of the decedent. It is quite probable that the admission of these statements violated the rule laid down in *Turner* v. *Howard,* 91 Vt. 49, 99 Atl. 236, and *Adams* v. *Cook,* 91 Vt. 281, 100 Atl. 42, but the record before us is too incomplete to show it. As we have seen, the testimony is not before us. All intendments are in favor of the ruling. We cannot say that this testimony could not be admissible in any state of the evidence, and we must, therefore, assume that it was made admissible by evidence not here shown. *Tenney* v. *Harvey,* 63 Vt. 520, 22 Atl. 659. Nor can we say that the statement of Mary A. Durphy as to a conversation between W. D. Martin and the decedent was inadmissible. There is not enough shown to make error appear. What W. D. Martin said, standing alone, may not have been important; but the fact that his remark brought no reply from the decedent may have been of significance. The record is too meager to warrant sustaining the exception.

Mrs. Durphy testified to a conversation between Mr. and Mrs. Martin, which we understand to have taken place at the Lake Sunapee camp. She was asked if she said anything, and replied that she did; she was asked what she said, and replied that she told Mrs. Martin that she had better go home and stay for awhile, for "it was getting on her nerves so that she was going to break down under it." Then she was asked if, in pursuance to this talk, she (Mrs. Martin) did go home, and at this point objection was made. The court recognized the fact that the objection came too late, treated it as a motion to strike out, allowed the testimony to stand, and gave the proponent an exception. The evidence came in without objection, and all right of objection was waived. It was within the discretion of the court whether to hold the proponent to this waiver or strike out the testimony.

Dr. Grout was a witness for the contestant. He had heard all the evidence in the case and was allowed to predicate an opinion of Mr. Martin's sanity thereon. This was excepted to on the ground that there was a conflict in the testimony given by the witnesses and that the witness was allowed to consider the

opinions expressed by them. If there was no conflict in the evidence as to any of the material facts detailed by the witnesses, and the opinions were excluded, the course taken with Dr. Grout was permissible. *State* v. *Hayden,* 51 Vt. 296. But we think that it sufficiently appears from the record that there was such a conflict. It is true that the transcript is not referred to, and we can only consider what expressly appears in the bill of exceptions. But when the ruling was made, counsel for the proponent strenuously insisted that there was such a conflict, and this does not appear to have been disputed by the contestant. Moreover, it appears that witnesses for the proponent gave evidence of Martin's "actions, doings and sayings," and predicated thereon opinions that he was sane; while witnesses for the contestant gave similar evidence, and predicated thereon opinions that he was insane; and that some of such evidence related to the same occasions. It would be hardly possible that such evidence would be entirely free from conflict; and the only fair inference from the record is that each group of witnesses testified to facts supporting his opinion. So, when the evidence related to the same occasions it must have been conflicting; otherwise, it would not have tended to support the conflicting opinions. Besides, the witness was allowed to take into consideration all that the witnesses had said "of and concerning" the acts and sayings of the decedent, which must have left him free to consider what was said "concerning" such acts as indication of sanity or insanity. And finally, the court, itself, in making the ruling recognized the existence of such a conflict by suggesting that the question asked did not eliminate the conflicting testimony but included it all. From the whole record it is plain that the court appreciated that there was a conflict such as the proponent claimed, and understandingly admitted Dr. Grout's opinion based in part upon the opinions expressed by the witnesses who had preceded him. This was error, and was necessarily harmful, and requires a reversal.

Dr. Keyes was a witness for the contestant. In his direct examination he was asked a question to which the proponent's counsel objected. Thereupon, counsel for the contestant remarked, "I'll put a new question inasmuch as there's a disposition on the part of the other side to interfere with the examination." To this the proponent excepted. The remark was unwarranted, and to allow it to go unwithdrawn and unrebuked was error. But in view of the fact that the case is to be reversed

on another point it is unnecessary to determine whether it was prejudicial or not.

The court charged the jury that it might consider the naturalness or unnaturalness of the will in determining the question of mental capacity. To this the proponent excepted. There was no error in this instruction. *Fairchild* v. *Bascomb*, 35 Vt. 398; *Crocker* v. *Chase*, 57 Vt. 413. The proponent complains that no definition of the term "naturalness" was given the jury. But that was not the point made below. The exception taken was specific, and will not here be extended beyond the precise point there made. *Graves* v. *Waitsfield*, 81 Vt. 84, 69 Atl. 137.

*Judgment reversed and cause remanded.*