IN RE EFFIE E. P. WELLS' WILL.

October Term, 1920.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed May 3, 1921.

*Will Contest—Impeaching Evidence—Objection First Raised in Supreme Court not Considered—Presumption on Review in Support of Ruling Below—Immaterial Evidence Must Be Prejudicial—Evidence of Testamentary Capacity—Of Reasonableness of Testatrix' Disposition of Property—Question of Remoteness of Evidence for Trial Court—Question not Raised by General Objection—Liberal Rules Apply to Admission of Evidence in Will Contest—Use of Memoranda While Testifying—Exception not Briefed Waived.*

1.  In the contest of a will on the grounds of lack of testamentary capacity, and undue influence by the residuary legatee, where a contestant, who was the niece and stepdaughter of the testatrix, testified that the relations between her and the testatrix had always been of the pleasantest up to a certain time, and there had not, to her knowledge, been any interruption of such relations, a letter written by her to a third person after the testatrix' death, stating that the testatrix had not spoken or written to her for a number of years, etc., was

admissible as contradicting her on an important matter, and as an admission on her part respecting the relations between her and the testatrix.

2. An objection to the admission of evidence made for the first time in Supreme Court will not be considered.

3. It will be assumed on review, the record not showing the contrary, that a witness stated the things upon which she based an opinion of the testatrix' feelings toward her.

4. To sustain an objection to the admission of evidence on the ground of immateriality alone, it must be shown that the evidence is not only clearly irrelevant but also prejudicial.

5. On the question of testamentary capacity, it was material to show that what the testatrix wrote and said respecting her deceased husband's regard for the residuary legatee was true; she having stated in the will that he was made a benefiiciary by reason, in part, of her husband's "confidence in and respect for" him.

6. Where a witness was examined as to certain pages of certain ledgers, and the pages are not before the Court, and the record is silent as to the inquiries made, it will be presumed that the evidence was material, there being no showing to the contrary.

7. Copies of the will of testatrix' husband, under which contestant was the principal beneficiary, and of the executor's account and of the trustees' account in that estate were admissible as part of the history of the controversy tending to show the reasonableness of the testatrix' disposition of her property; it fairly appearing that she was acquainted with their contents.

8. The residuary legatee in the testatrix' will having been the executor and a trustee named in said will of her husband, such documents were admissible as evidence of her husband's "confidence in and respect for" him.

9. The question of the remoteness of offered evidence is for the trial court, and is not reviewable.

10. Testimony by the residuary legatee as to trips with the testatrix' husband on business and to a banker's convention was admissible as tending to show her husband's "confidence in and respect for" him.

11. Where copies of a number of letters were offered in evidence collectively, subject to an objection that was unlimited, an exception to their admission cannot be sustained if any of the letters were admissible.

12. Where a will is contested on the grounds of lack of testamentary capacity and undue influence, the inquiries must, for the most part, be carried on in accordance with liberal rules of procedure; the range of inquiry depending upon the circumstances of the case, and resting largely in the discretion of the trial court.

13. Knowledge of the testatrix of what her husband had done for the contestant's family and their extravagant use of money was admissible, as having a legitimate bearing upon the reasonableness of her will.

14. As bearing upon testamentary capacity, letters from the testatrix' husband to the contestant, of which the testatrix had knowledge, expressing disapproval of the extravagance of the contestant and her husband, were admissible to prove the truth of testatrix' statement in a letter to the contestant that testatrix' husband "had talked your case over with me many times and worried about it far too much for his good."

15. A ground of objection not raised below cannot be relied upon in Supreme Court.

16. Certain evidence held to be remotely relevant, but falling in that class of evidence which the trial court in its discretion may admit or exclude without committing legal error.

17. An objection to a witness using unidentified memoranda while testifying is not raised by an objection to the witness' testimony on the ground of immateriality.

18. An exception not briefed is waived.

19. A witness while testifying may use a paper containing data taken from entries in diaries present in court to save time in looking up.

APPEAL from the probate court for the District of Chittenden on allowance of the will of Effie E. P. Wells, contested on the grounds of lack of testamentary capacity and undue influence. Trial by jury at the March Term, 1920, Chittenden County, *Fish*, J., presiding. Verdict for proponents sustaining the will. Judgment on the verdict. The contestants excepted. The opinion states the case.

*A. L. Sherman, V. A. Bullard*, and *H. A. Cushing* for the contestants.

*Charles H. Darling, John G. Sargent,* and *Guy M. Page* for the proponents.

TAYLOR, J.   The cause is an appeal from the decree admitting to probate an instrument purporting to be the last will and testament of Effie E. P. Wells, late of Burlington.   The grounds of the appeal were lack of testamentary capacity and undue influence.   The trial in county court was by jury, resulting in a verdict and judgment sustaining the will.   The contestants rely upon only fifteen of the many exceptions taken during the trial.

Edward Wells, husband of the testatrix, died in February, 1907, leaving a will, and survived, as heirs at law, by his widow and a daughter by a former marriage, Anna Wells Sykes, wife of James G. Sykes.   His two wives were half-sisters, so Mrs. Sykes is a niece as well as a stepdaughter of Effie E. P. Wells.   Hannah P. Wells is a half-sister of the testatrix and the widow of Charles Wells, a deceased brother of Edward.   Effie E. P. Wells deceased October 19, 1919, at the age of 66 years, after an illness of six days of pneumonia.   The contestants are her only heirs at law.   Her will was holographic, executed October 4, 1917.   The largest part of the testatrix' property came to her by the will of her husband.   Mr. Wells left a large estate, the bulk of which was disposed of under his will in the following manner: The widow took one-third in fee and the remaining two-thirds was constituted a trust fund with Mrs. Sykes and her children as beneficiaries.   Henry L. Ward, one of the proponents of the will in controversy, with others (brothers of Edward Wells) was a trustee of this fund for some eight years, resigning the trust in September, 1916, after Mrs. Sykes became dissatisfied with his services, as will later appear.   He is the residuary legatee under the will of Mrs. Wells, and the contestants claim unduly influenced its making.   Mr. Wells was for many years president of the Burlington Trust Company, during which time Mr. Ward was successively a clerk, assistant treasurer, and treasurer of the Trust Company.   Some time after Mr. Wells' death he became its president.

The business, and securities of the trust fund were kept by the trustees at the banking rooms of the Burlington Trust Company, and Mr. Ward had the active management of the trust.   The contestants showed that about the last of November, 1913, a bond of the Commonwealth of Massachusetts of $250,000,

registered in the name of the trustees, and part of the trust estate, was lost.   Mr. Ward at once assumed all responsibility for the loss, and took steps for the restoration to the assets of the estate of a duplicate bond.   He procured such duplicate to be issued by the Commonwealth and delivered to the trustees in November, 1915, without expense to the estate.   On hearing of the loss of the bond Mrs. Sykes consulted counsel and undertook to ascertain the facts and protect her interests.   An examination of the books and accounts of the trust estate was made by an audit company soon after the bond was restored.   On the basis of the company's reports steps were taken by counsel employed by Mrs. Sykes to secure Mr. Ward's resignation as trustee, and the suggestion was made that if refused steps would be taken looking to his removal.   Mr. Ward signed a resignation April 27, 1916, which was held in escrow.   He finally filed a resignation in September, 1916.   Mr. Ward promptly informed the testatrix of the request for his resignation and showed her the request and the reports of the audit company.   During the weeks just prior to April 27, 1916, he was in frequent correspondence with her on the subject and occasionally saw her at her residence.   In the troubles and controversies over the lost bond and the question of Mr. Ward's resignation the testatrix sided with Mr. Ward, and emphatically expressed to Mrs. Sykes her disapproval of the course being taken.

October 25, 1916, the testatrix sent a check of ten dollars to Mrs. Sykes' daughter Martha, who was then away from home at school, with a letter telling her to use it for something she wanted for her room.   On November 1, 1916, Martha wrote the testatrix the following letter:

·"Dear Grandma:

"I just received word yesterday saying that I could not keep the money you sent me and that I must send it back.   I am so sorry and thank you so much all the same for sending it and for thinking about me.   As I had already cashed the cheque I am sending back a bill which you will find enclosed.   The breakfast bell has rung so I have no time for more.   I am so sorry. Love to all.

"Your loving granddaughter,

"Martha."

On November 2, 1916, the testatrix replied:

"My dear Martha:

"Your note with the money came this morning. I am very sorry I have caused you any trouble, never thought but it would be all right. I had sent you a birthday gift, so suppose I cannot send you or Elizabeth a Xmas gift, and not finish giving you the spoons I had started in with. I love you dear and always have and please do not forget your grandmother. Think of me once in a while and the good times we have had. The memory of the times we have had together cannot be taken from us. Nora often speaks of you both, as many of your friends do. I hope dear you will keep well and enjoy your school. Please love me and not forget us here. Sometime you will understand.

"Your loving grandmother."

This letter came to the attention of Mrs. Sykes soon after it was written. No communication passed between the testatrix and Mrs. Sykes or her daughter subsequent to these letters. The evidence tended to show that the grandchildren never visited the testatrix after the check episode, although they had previously visited her a portion of each summer, save one when infantile paralysis was prevalent in Burlington.

Mrs. Sykes receives nothing under the terms of the will. Hannah P. Wells, the other contestant, receives five thousand dollars, and each of her four children a like sum. Provision is made for Mrs. Sykes' daughters, Martha and Elizabeth, by trust funds of thirty thousand dollars each. The only provision of this trust that need be noticed is the provision that if both die before reaching the age of forty-five years leaving no issue, both funds are to revert and become part of the residuary estate.

[1, 2] The first exception briefed was taken to the admission of a letter written October 30, 1919, by Mrs. Sykes to one Margaret Huston in reply to a letter of condolence on the death of the testatrix, admitted against the contestants' objection that the evidence was incompetent, immaterial, written some time after the death of Mrs. Wells, never could have been called to her attention, and that it contains no admission which in any way tends to inpeach the testimony given by Mrs. Sykes. As a witness in her own behalf Mrs. Sykes had testified in direct examination that from her earliest recollection until the time she received a letter from her stepmother about February 28, 1916, which was in evidence, the relations between herself and the testatrix had always been of the pleasantest; that they were de-

voted to each other, and there had not, to her knowledge, been any interruption of such relations. The portion of the letter upon which the claim of its admissibility was based is as follows: "I do not know if either of you knew it but she has not spoken or written to me in a number of years—ever since Mr. Ward lost a very valuable bond of mine and in loyalty to my father and trying to protect my children's property I made him make good. It was purely a business matter but she took sides with him against me and she has—by her will—cut me off from my home and the property but practically left my childern out too—giving everything except a few bequests to Mr. Ward—house and all. You can imagine how this hurts me—for it has been very hard all these years to be so misjudged—when it was all a business matter and had to be settled in a business way. I went to her in her illness with forgiveness and love in my heart and all this has been almost more than I can bear. I can never forget her loving care for me but every year since father's death—it has been harder and harder as she has shown me so clearly that her love for me was not what I thought." That the letter was admissible as tending to contradict Mrs. Sykes on a matter of vital importance is at once manifest. Besides it was an admission on her part respecting the relations between her and the testatrix which was a material issue in the case. The objection made for the first time in this Court that it was error to receive this evidence because its application was not limited to Mrs. Sykes as a contestant in any event comes too late to avail. *In re Estate of Martin*, 92 Vt. 362, 367, 104 Atl. 100.

[3] Mrs. Ward, wife of the proponent Ward, was being examined as a witness by proponents' counsel. After she had been asked to tell what the testatrix' manifestations as to feelings toward her were—whether affectionate or otherwise—and had answered "affectionate", it was objected that it was a matter of interpretation, counsel adding; "She can tell what was done that the jury may understand and determine." The court observed that she had already indicated that in her testimony and ruled question and answer proper. It is urged in support of the exception then taken that the witness was not required to state the things upon which she based an opinion; but on the record the contrary must be assumed, which disposes of the contestants' objection and brings the case clearly within the rule permitting a witness to add his conclusion, judgment, or opinion. See

*State* v. *Felch*, 92 Vt. 477, 486, 105 Atl. 23, and cases there collected.

[4, 5]   The proponents called Charles P. Smith as a witness and inquired of him concerning his acquaintance and business relations with Edward Wells anl Henry L. Ward. Some questions of a similar nature were asked concerning brothers of Mr. Wells, who were associated with him in business, and concerning the father and a brother of Mr. Ward, who had been the witness' business associates. It was objected that this line of testimony was immaterial, but it was admitted as preliminary. It is not worth while to examine this evidence in detail. Much of it was clearly introductory, and none of it was of a character to prejudice the contestants. It should be remembered that to sustain an objection on the ground of immateriality alone it must be made to appear that the evidence is clearly irrelevant (*Slayton Tr.* v. *Drown*, 93 Vt. 290, 294, 107 Atl. 307), and also prejudice must be made to appear. Against the same objection the witness was permitted to testify that during the time Mr. Wells was president of the Burlington Trust Company the work of the bank was actively performed by Mr. Ward; that he was the active man; that he had conversations with Mr. Wells respecting the bank and bank matters; and that witness knew of the esteem that Mr. Ward was held in by Mr. Wells. It is now urged that the only issue then before the court was as to the testatrix' capacity to make a will, and that the esteem in which Mr. Ward was held by any or all of these people (referring to Mr. Wells and his brothers) was immaterial. If we give the force to the witness' testimony respecting Mr. Wells' "esteem" for Mr. Ward that the contestants claim for it, *viz.*, a high regard, still with the preliminary testimony it was relevant to the issue of testamentary capacity. It became material for the proponents to show that what the testatrix wrote and said respecting Mr. Wells' regard for Mr. Ward was true. Among such statements is this from the clause of the will making Mr. Ward a beneficiary: "I do this in memory of my husband and in recognition of his confidence in and respect for Mr. Ward, through a long and intimate business acquaintance, and for his great kindness and valuable services extended to me since my husband's decease." True, the question first asked was whether the witness knew of the esteem held by "these several Wells people," which included Edward Wells. But the answer, "I think I should say yes," was not un-

der exception. The next question, evidently intended to show what their estimate was, was interrupted by a special objection that the esteem of anybody outside the Edward Wells' family for Mr. Ward could have no bearing upon the case, whereupon the question confined to Edward Wells was answered, "I did." This answer was under exception.

[6]  F. L. Roberts was called as a witness by the proponents, and produced the ledgers of the Burlington Trust Company for the purpose of showing the entries of transactions with different customers at the bank. The record shows that, an objection being interposed, a colloquy ensued in which court and counsel participated. To meet any inference from questions asked of their witnesses in cross-examination that Mr. Ward was the only person who handled Mrs. Wells' business—that the entries in the bank were in Mr. Ward's handwriting—the proponents offered to show that he was not only doing that but all the other business; that it was just a part of the bank business. The court intimated that the evidence might be out of time, but to accommodate the witness admitted it then as matter of discretion, and noted an exception by the contestants. Certain pages of the ledgers, which are referred to and made a part of the exceptions, were inquired about under this exception, but the ledgers have not been produced, and if they were before us the result would be the same, for the record is wholly silent as to what inquiries were made, and it will be presumed that the evidence was material, there being no showing to the contrary. *In re Estate of Martin, supra.*

[7, 8]  The contestants brief together exceptions numbered 6, 7, 8, and 9. These exceptions challenge the admissibility of certain documentary evidence admitted against the general objection of immateriality. The first was the check sent by the testatrix to the granddaughter, Martha. Counsel stated that they did not object to the signature of Mrs. Wells or to the check's being shown, but did object to "the receiving the money and the signing of the check by this young girl." There is nothing in the record indicating that the check was received for the purposes objected to. The fact that the money was received and returned by Martha was shown by other evidence and does not appear to have been in dispute. The other documents objected to as immaterial were certified copies (1) of the will of Edward Wells; (2) of the executor's account in the estate of Edward

Wells; and (3) of the trustees' account in that estate. It requires no extended argument to show that these documents evidenced material facts. They were all part of the history of the present controversy, and tended to show the reasonableness of the testatrix' disposition of her property. It fairly appears that the testatrix was acquainted with the contents of these documents. The will showed the relative provisions that Mr. Wells had made for his widow and daughter. The executor's account tended to show the amount and disposition of Edward Wells' estate, and so, the source and amount of the testatrix' estate and the extent of the provision made by Mr. Wells for Mrs. Sykes and her children. The trustees' account likewise tended to show Mrs. Sykes' financial condition and the amount she had and would receive out of the family estate. Moreover, the fact, evidenced by these documents, that Mr. Wells had entrusted the management of his large estate to Mr. Ward as executor and trustee was evidence of his ''confidence in and respect for'' the latter, which the testatrix declared as a motive for making Mr. Ward a beneficiary under her will. The facts disclosed in these documents afford the basis of reasonable inferences in support of the facts in issue, which meets the objection to their admissibility. *Gilfillan* v. *Gilfillan's Estate,* 90 Vt. 94, 101, 96 Atl. 704.

[9, 10]  Mr Ward was called as a witness for the proponents, and was inquired of generally concerning his business relations with Edward Wells. Against the objection that it was immaterial he was then permitted to testify with reference to certain trips with Mr. Wells through the West on business connected with the bank, and, against the additional objection that it was too remote, that in 1904 they made a trip to Washington to attend a bankers' convention. On this record, the question of remoteness was for the trial court and is not reviewable. See *Wellman, Admr.* v. *Mead,* 93 Vt. 322, 334, 107 Atl. 396; *Smith* v. *Martin,* 93 Vt. 111, 128, 106 Atl. 666. That this line of evidence was relevant to the issue of testamentary capacity is shown by what we have already said respecting the fourth exception.

[11]  In the cross-examination of Mrs. Sykes, called as a witness in her own behalf, she was shown and identified her father's letter copy book. Copies of certain letters written to her and her husband by Mr. Wells between July 1, 1901, and September, 1916, were shown to her, and she testified that she had either read them at the time or knew of their contents, and had talked

over the subject-matter of the letters with her father. The copies were admitted in evidence against the objection of immateriality, incompetency, and remoteness. They were offered collectively, and the objection was unlimited; so, if any of the letters were admissible, the exception cannot be sustained. *Crahan* v. *Chittenden*, 82 Vt. 410, 415, 74 Atl. 86. It was conceded that Mr. Wells gave Mr. and Mrs. Sykes $50,800 between the time of their marriage in 1901 and his death, and in addition $19,500 to Mr. Sykes to purchase stock in a company with which the latter was connected. Mrs. Sykes had testified in direct examination that neither she nor her husband had ever asked her father for money; that he had always given them what he had freely, without solicitation; and that he had never expressed any disapproval of their expenditure of money.

[12]    As to the objection for remoteness, we cannot say that the evidence was so remote that its admission would not be a proper exercise of judicial discretion. *Smith* v. *Martin, supra.* Especially is this so in view of the issues being tried. We said in *Re Esterbrook's Will*, 83 Vt. 229, 241, 75 Atl. 1, that in a will case, where lack of testamentary capacity on the part of one not before the court and undue influence exerted upon such an one are the grounds of contest, there are a few and but a few artificial rules to be applied. The great problem of whether or not the instrument offered for probate is the product of a disposing mind acting freely in view of all the affection, sympathy, confidence, indifference, and distrust, likes and dislikes, memories, purposes, and anticipations engendered, it may be, throughout a lifetime, demands solution through an investigation befittingly untrammeled, and the inquiries must for the most part be carried on in accordance with liberal rules of procedure. We said recently that the range of the inquiry depends upon the circumstances of the case and rests largely in the discretion of the trial court. *In re Estate of Martin*, 92 Vt. 362, 365, 104 Atl. 100.

Any possible doubt as to the correctness of the ruling is removed by an examination of the letters. Some of them tend to contradict Mrs. Sykes' testimony referred to above, which alone would defeat the exception.

[13-15]    Other letters show the circumstances attending the gifts of money from time to time and still others disclose disapproval of apparent extravagance. It is not claimed that the testatrix did not know about these letters, but it is contended

that if she did the correspondence between Mr. Wells and Mr. and Mrs. Sykes would have no bearing upon the question of her mental capacity. However, the knowledge of the facts disclosed by the correspondence would not be irrelevant. Knowledge of what Mr. Wells had done for the Sykes family and their extravagant use of money would have a legitimate bearing upon the reasonableness of the will. Besides, Mr. Wells' letters expressing disapproval of their extravagance, became admissible to prove the truth of the testatrix' statement in a letter to Mrs. Sykes that "he (Mr. Wells) had talked your case over with me many times and worried about it, far too much for his good", as bearing upon testamentary capacity. The point made in argument that this evidence should not have been admitted against Hannah P. Wells was not made below and cannot be relied upon.

The defendants brief the fourteenth exception merely by reference to their argument on the preceding one. The question raised is of the same character, and is controlled by the disposition of that exception.

[16] A letter from Mrs. Sykes to her uncle, Frederick H. Wells, one of the trustees, dated December 5, 1915, was received in evidence against contestants' objection that it was immaterial. The portion of the letter relied upon reads: "I am sorry to have to ask you to request Mr. Ward to send me a complete list of securities in order that I may fill out my income tax list. The only one I ever had was at the distribution of the estate years ago. And would you ask Mr. Besett to be kind enough to let me know if a dividend is declared at any time, so I may get the money at once." It was offered for the purpose of showing that Mrs. Sykes was insisting on getting the income at once, and that she was going behind the backs of the trustees for information as to when some dividend might be paid. To get the true perspective of this exception it will be necessary to recall the trusteeship controversy and the part it played in estranging the testatrix from Mrs. Sykes. It fairly appears that Frederick H. Wells was cooperating with Mrs. Sykes in this controversy, and that the testatrix became extremely bitter because of their attitude toward Mr. Ward. It had appeared in evidence that the testatrix understood and had stated that Mrs. Sykes had pressed Mr. Ward as trustee for money. Any evidence tending to show that the testatrix' feelings and statements were founded on facts would, of course, be material. We do not think the court erred

in admitting this letter, as it tended to show Mrs. Sykes' attitude toward Mr. Ward as trustee and her lack of confidence in him. It fairly indicated that she was insistent (though perhaps rightly so) upon the income being paid over at once it was received; and, if somewhat remotely, tended to show that she had been pressing Mr. Ward, the active trustee, for money. Doubtless, it is only remotely relevant, but it falls in that class of evidence which the court in its discretion may admit or exclude without committing legal error. *In re Estate of Martin, supra.*

[17] Mrs. Annie Parker, a witness called by the proponents, having a paper in her hands which she was referring to, was asked to state whom she met at the testatrix' house in 1916. The question was objected to, counsel stating: "We desire to have it appear that this paper the witness is using to refer to had not been identified, not being shown to the court, or that the witness desires or needs anything to refresh her recollection." The court admitted the answer, which named several persons, and noted an exception. Immediately following this, and subject to objection and exception for immateriality, the witness was permitted to name persons whom she had met at the testatrix' house in the years 1917, 1918, and 1919. Under these exceptions the contestants argue that it was error for the court to permit the witness to use the paper in testifying without the preliminary showing referred to in the statement quoted above. It is said that contestants objected to the use of the paper, but such is not the fair interpretation of the record. The objection was to the evidence called for by the questions, not because of the witness' referring to memoranda, but because not material. Contestants' counsel developed the fact in cross-examination that the paper contained the names of people whom the witness had met at the testatrix' house during the years referred to, and was made, in anticipation of being called as a witness, from entries in diaries present in court to save time in looking up. No effort was made to have the evidence objected to stricken out and the incident closed by the contestants' introducing the papers in evidence in connection with the witness' testimony.

[18, 19] The objection as to materiality is waived, not having been briefed, and the point now raised would seem to have been an afterthought. The first objection was general, and was properly overruled, if the evidence was material. The statement, "We desire to have it appear," etc., called for no ruling by the

court, and cannot now be used to predicate error. But this should not be taken as implying that the use of the paper was improper in the circumstances shown. It is clearly within the rule of our cases permitting such use. *Mahoney's Admr.* v. *Rutland R. Co.,* 81 Vt. 210, 69 Atl. 652; *Davis* v. *Field,* 56 Vt. 426; *Pinney* v. *Andrus,* 41 Vt. 631. See also Wig. on Ev. §§ 759-761.

*Judgment affirmed, to be certified to the probate court.*